## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

ANTHONY DEAN CONLEY, *et al*.,    )
        **Plaintiff,**    )
        )
**v.**    )     **Case No. 11-03200-CM**
        )
**DAVID MCKUNE,**    )
*et. al.*    )
        **Defendants.**    )
        )

## MEMORANDUM IN SUPPORT OF DEFENDANTS'
## MOTION FOR SUMMARY JUDGMENT

Defendants Rex Pryor, Kyle Deere, Brett Peterson, Andrew Parks, and Daniel Bryan ("Defendants"), by and through Assistant Attorney General Whitney L. Casement, respectfully submit this Memorandum in Support of Defendants' Motion for Summary Judgment in accordance with D. Kan. Rules 7.1(a) and 7.6. Defendants respectfully request this Court enter summary judgment because there is no genuine issue of material fact regarding Defendants lack of personal involvement in any alleged constitutional deprivation. Defendants additionally request the Court grant Defendants' motion with regard to Plaintiff's claims against Defendants in their official capacities because they are entitled to Eleventh Amendment Immunity. Defendants state the following in support.

### NATURE OF CASE AND MATTER BEFORE THE COURT

Plaintiff Anthony D. Conley is an inmate who alleges Defendants acted with deliberate indifference to a substantial risk of serious harm in violation of his Eighth Amendment rights while he was incarcerated at the Lansing Correctional Facility ("LCF") in Lansing, Kansas.[1] Proceeding *in forma pauperis* and *pro se*, he filed this suit under 42 U.S.C. § 1983, seeking

---

[1] The remainder of Plaintiff's claims were dismissed by this Court. (Doc. ?). The Tenth Circuit Court of Appeals affirmed dismissal of all but Plaintiff's Eighth Amendment claim alleging deliberate indifference to his serious dental needs by Defendants Pryor, Deere, Peterson, Parks, and Bryan. (Doc. 92 at 14-15).

money damages and injunctive relief against the corrections officers in their individual and official capacities. (Doc. 1, Compl. at 5); (Doc. 4).

## STATEMENT OF UNCOTROVERTED FACTS

### I.   *Uncontroverted facts related to the parties.*

1. Plaintiff, Anthony Dean Conley, is an inmate at El Dorado Correctional Facility in El Dorado, Kansas. (Doc. 81).

2. Defendant Rex Pryor was at all times relevant to this suit employed by the Kansas Department of Corrections as acting Warden and Warden at LCF, in Lansing, Kansas. (Ex. A, Pryor Aff. at ¶ 1).

3. Defendant Kyle Deere was at all times relevant to this suit employed by the Kansas Department of Corrections as Deputy Warden of Programs at LCF. (Ex. B., Deere Aff. at ¶ 1).

4. Defendant Brett Peterson was at all times relevant to this suit employed by the Kansas Department of Corrections as a Unit Team Manager and Policy and Compliance Manager at LCF. (Ex. C., Peterson Aff. at ¶ 1).

5. Defendant Andrew Parks was at all times relevant to this suit employed by the Kansas Department of Corrections as a Unit Team Manager at LCF. (Ex. D, Parks Aff. at ¶ 1).

6. Defendant Daniel Bryan was at all times relevant to this suit employed by the Kansas Department of Corrections as a Corrections Officer II assigned to medium grounds crew at LCF. (Ex. E, Bryan Aff. at ¶ 1).

## II.   Uncontroverted facts as they relate to Defendant Pryor.

7.  Defendant Pryor is only familiar with Plaintiff because he was named as a defendant in this lawsuit and because Defendant Pryor signed a response to Plaintiff's grievance complaining about his teeth. (Ex. A at ¶ 3).

8.  Other than the grievance appeal concerning Plaintiff's teeth, Defendant Pryor never received correspondence from Mr. Conley regarding his alleged dental condition prior to his filing this lawsuit. (Ex. A at ¶ 3).

9.  Defendant Pryor does not recall ever encountering Plaintiff in person while Plaintiff was housed at LCF. (Ex. A at ¶ 6).

## III.   Uncontroverted facts as they relate to Defendant Deere.

10.  As Deputy Warden of Programs at LCF, Defendant Deere's duties and responsibilities included overseeing all LCF contractual agreements, including medical and educational services, overseeing custody classification, visitation, and recreation, and acting as a liaison with private prison based and non-prison based industries.

11.  Defendant Deere is only familiar with Plaintiff because Plaintiff filed this lawsuit in which Deere was named as a defendant. (Ex. A at ¶ 2); (Ex. B at ¶ 2). Defendant Deere never encountered Plaintiff in person while he was housed at LCF. (Ex. B at ¶ 2).

12.  Defendant Deere was only aware of Plaintiff's complaints about his alleged dental condition because he was named as a defendant in this lawsuit. (Ex. A at ¶ 3); (Ex. B at ¶ 3).

13.  Defendant Deere never received any correspondence from Plaintiff regarding Plaintiff's alleged dental condition until Plaintiff filed the current lawsuit. (*Id.*).

**IV.** *Uncontroverted facts as they relate to Defendant Peterson.*

14. Defendant Peterson is familiar with Plaintiff because Peterson reviewed grievances Plaintiff filed and any correspondence Plaintiff sent to the LCF Warden. (Ex. C at ¶ 2). Defendant Peterson was also aware of Mr. Conley's complaints about his alleged dental condition because he reviewed grievances Plaintiff filed about the alleged condition. (*Id*. at ¶ 3). In response to Plaintiff's grievance about his teeth, Defendant Peterson contacted Correct Care Solutions staff and Unit Team Manager Andrew Parks to ensure a dental appointment was made for Plaintiff. (*Id*.).

**V.** *Uncontroverted facts as they relate to Defendant Parks.*

15. Defendant Parks is familiar with Plaintiff because Plaintiff was housed in one of the units Defendant Parks was assigned to. (Ex. D at ¶ 2). Defendant Parks also reviewed and responded to any grievance or form 9 regarding Plaintiff's alleged dental condition that he filed while he was assigned to Parks's unit caseload. (*Id*.).

16. Defendant Parks was aware of Plaintiff's complaints about his alleged dental condition because Plaintiff filed grievances and form 9s regarding his alleged dental condition while he was assigned to Parks's unit caseload. (*Id*. at ¶ 3). After Plaintiff made Parks aware of his complaints and after Parks consulted with medical staff, Parks informed Plaintiff that the orthodontic procedure Plaintiff desired was an elective cosmetic procedure not provided by Correct Care Solutions (CCS), the Kansas Department of Corrections contract medical provider at the time Plaintiff was housed at LCF. (*Id*.).

**VI.** *Uncontroverted facts as they relate to Defendant Bryan.*

17. Defendant Bryan was familiar with Plaintiff because he was an inmate who was housed in medium custody at LCF, and at that time the medium grounds area was used for

inmate visitation for medium custody inmates. (Ex. E at ¶ 2). Defendant Bryan was assigned to medium grounds crew at the time Plaintiff was housed at LCF. (*Id*. at ¶ 1).

18. Defendant Bryan was not aware of any medical condition that Plaintiff had while he was housed at LCF or that Plaintiff had filed any grievances or any other form of complaint regarding a dental medical condition. (*Id*. at ¶¶ 3-4).

19. Defendant Bryan never filed a disciplinary report against Plaintiff in response to a complaint about a medical or dental condition. (Ex. E at ¶¶ 4, 8). Defendant Bryan did file two disciplinary reports against Plaintiff while he was at LCF. (*Id.* at 8).

20. Bryan filed the first disciplinary report as a result of observing Plaintiff's theft of paper towels and for his failure to obey the order to return to his quarters on September 16, 2011. (*Id*.); (Doc. 118, *Martinez* Report at 8-9); (Doc. 118-4 at 4).

21. Bryan filed the second disciplinary report charging Plaintiff with disobeying orders, avoiding an officer and insubordination or disrespect as a result of an encounter Bryan had with Plaintiff in the dining room at approximately 11:15 a.m. on November 7, 2011. (Ex. E at ¶ 8); (Doc. 118, *Martinez* Report at 9); (Doc. 118-5 at 4).

22. At the time of the disciplinary reports, Officer Bryan was not aware of any medical or dental condition that Plaintiff had or that Plaintiff had filed grievances concerning any medical condition. (Ex. E at ¶ 8).

23. After hearings on each disciplinary report, Plaintiff was convicted of all charges. (Doc. 118 at 9-10); (Doc. 118-4 at 5); (Doc. 118-5 at 5). The convictions were upheld by the Secretary of Corrections on appeal. (Doc. 118 at 9-10); (Doc. 118-4 at 13); (Doc. 118-5 at 13). Plaintiff made no claims during his appeals of the convictions that the disciplinary reports were filed in retaliation for filing a grievance or that Officer Bryan made

comments about his grievances or dental condition. (*Id.*).

VII.    *Uncontroverted facts as they relate to all remaining defendants.*

24. None of the Defendants were ever told by medical staff at LCF that any orthodontic procedure or treatment or other medical treatment was medically necessary for Plaintiff's alleged dental condition or to preserve Mr. Conley's life. (Ex. A at ¶ 4); (Ex. B at ¶ 4); (Ex. C at ¶ 4); (Ex. D at ¶ 4); (Ex. E at ¶ 6).

25. During the time Plaintiff was housed at LCF, Defendant Parks was told by CCS medical staff at LCF that the only reason Plaintiff needed to undergo orthodontic procedures was for elective cosmetic purposes, and not for any medical or pain-management purposes. (Ex. D at ¶ 4).

26. None of the Defendants ever attended or participated in any meetings in which any alleged medical or dental condition of Plaintiff's was discussed. (Ex. A at ¶ 5); (Ex. B at ¶ 5); (Ex. C at ¶ 5); (Ex. D at ¶ 5); (Ex. E at ¶ 5); (Doc. 118-2, Plaintiff's medical records); (Doc. 118-3, Plaintiff's mental health records).

27. None of the Defendants ever had any encounter with Plaintiff in which they observed Plaintiff had a serious medical or dental condition or that he was in pain. (Ex. A at ¶ 6); (Ex. B at ¶ 6); (Ex. C at ¶ 6); (Ex. D at ¶ 6); (Ex. E at ¶ 7).

VIII.   *Kansas Department of Corrections Policies and Procedures.*

28. Internal Management Policy and Procedure ("IMPP") number 10-115 provides that "Medical and dental orthoses or prostheses and orthodontic devices and other aids to impairment may be provided, as determined by the Departmental Health Authority or designee, when the health or mental health of the inmate would otherwise be adversely affected." (Doc. 118-9 at 1).

29. IMPP 10-116 provides that orthodontics is a dental procedure that is considered elective and not routinely offered. (Doc. 118-9 at 5).

30. IMPP 10-116 further provides that "Dental treatment that falls outside of the professional capacity of the facility dentist shall be referred to an appropriate dental specialist upon approval of the Departmental Dental Authority." (Doc. 118-9 at 5).

IX.   *Uncontroverted facts as they relate to Plaintiff's medical and dental appointments.*

31. Plaintiff never complained of dental pain, sores in his mouth from his teeth, or breathing problems related to his teeth when he visited the medical clinic. (Doc. 118, *Martinez* Report, at 4).  Plaintiff's medical records do not contain any statements by a treatment provider that Plaintiff's medical conditions were the result of his teeth. (*Id*.).

32. Plaintiff's dental records since January 25, 2005 show he has never been medically prescribed dental braces or any orthodontic procedure. (Doc. 118-1).

33. On or about March 27, 2011, Plaintiff submitted a healthcare request for dental treatment stating that his teeth were overlapped, bucked, crowded, and crooked to the point that he would chew holes in the insides of his cheeks, that his teeth caused a speech impediment, and that he couldn't close his mouth or hold saliva in his mouth. He also stated that it "limits and impairs my major life activities (chewing, speaking and breathing)." (Doc. 118, *Martinez* Report, 2-3); (Doc. 118-7).

34. Prior to this request, Plaintiff had been treated by the dental clinic biannually beginning in 2005. (Doc. 118, *Martinez* Report at 3); (Doc. 118-1, Dental Records, at 1-9).

35. At no time prior to this visit did Plaintiff complain to the dental staff about dental pain, chewing holes in his cheeks or problems closing his mouth. (*Id*.).

36. He denied any dental pain at dental examinations in October of 2005 and again in October 2007 and failed to appear for his regularly scheduled cleaning and treatment in

October 2009, the last scheduled appointment prior to the request for treatment for his crooked teeth. (*Id*.).

37. On May 23, 2011, Plaintiff attended a dental appointment with Dr. Keith Murray, D.D.S., in which Plaintiff stated his teeth were crooked and sometimes he bit his lip (Doc. 118-1 at 12).

38. After seeing Plaintiff on May 23, 2011 at his dental appointment, Dr. Murray concluded that Plaintiff had essentially normal dentition absent of periodontal disease. (Ex. F, Murray Aff. at ¶ 3); (Doc. 118-1, Conley Dental Records at 12). In layman's terms, this means he did not have gum disease. (*Id*.). Dr. Murray did not see any irritation, lacerations, or ulcerations on Plaintiff's lips or inner-cheeks or any scarring of the mucosa, which in layman's terms is the inside of a person's cheek. (*Id*.).

39. During the May 23, 2011 check up, Dr. Murray told Plaintiff "we don't do braces here" because Dr. Murray concluded it was not medically necessary for Plaintiff to receive orthodontic treatment and because KDOC's general policy was that the facility would not provide cosmetic dental work. (Ex. F at ¶ 3). The only reason for such treatment would have been for cosmetic purposes. (*Id*.).

40. Dr. Murray never observed any scarring, irritation, lacerations, or ulcerations on Plaintiff's lips or inner-cheeks. (Ex. F at ¶ 4).

41. Dr. Murray never concluded that it was medically necessary for Plaintiff to undergo orthodontic treatment. (Ex. F at ¶ 7). He also never told any person that it was medically necessary for Plaintiff to undergo orthodontic treatment or that such treatment was necessary to preserve Plaintiff's life. (Ex. F. at ¶ 5).

42. Dr. Murray never spoke to Rex Pryor, Brett Peterson, Kyle Deere, Andrew Parks, or

Daniel Bryan about any alleged medical condition of Plaintiff's with regard to his teeth. (Ex. F at ¶ 5). These individuals never attended a meeting in which Dr. Murray discussed Plaintiff's alleged dental condition. (*Id.*); (Doc. 118-3, Dental Records, at 57).

43. Dr. Murray did attend a multidisciplinary team meeting on November 8, 2012 in which Plaintiff's complaints about his dental condition were discussed. (Doc. 118-3 at 57). The individuals who attended the meeting were Kansas Regional Medical Director Corbier, unit team manager Nance, unit team counselor Anderson, Regional Manager Hoffman, Regional Dental Director Murray, Chief of Psychiatry Zaylor, Director of Nursing Bailey, mental health provider Leffingwell, PREA Coordinator Collins, EAI Special Agent Haehl, and mental health coordinator Hendry. (*Id.*).

**X.** ***Uncontroverted facts as they relate to Plaintiff's mental health treatment.***

44. Plaintiff does not allege that he was denied mental health treatment by any of the Defendants. (Doc. 68, Amended Compl.).

45. Plaintiff consistently received mental health services during the time he complained about his alleged dental condition. (Doc. 118-3, Mental Health Records).

46. Defendant Parks, who was aware of Plaintiff's grievances about his alleged dental condition because he was Plaintiff's unit team manager, requested mental health services for Plaintiff on or about August 12, 2011. (Doc. 118, Martinez Report at 4-7); (Doc. 118-3, Mental Health Records, at 1); (Ex. D at ¶ 3).

47. Plaintiff saw several social workers and a psychiatrist from August 2011 to June 2012. (Doc. 118, Martinez Report, at 4-7); (Doc. 118-3, Mental Health Records).

48. Plaintiff complained about his teeth to the mental health professionals he met with while at Lansing Correctional Facility. (Doc. 118-3, Mental Health Records).

49. The mental health professionals he met with developed a treatment plan than included bimonthly individual counseling. (*Id.*).

50. On June 19, 2012 Plaintiff refused to attend his mental health appointments. (Doc. 118-3 at 28).

51. At no time did a mental health professional state orthodontic procedures were necessary to address Plaintiff's mental health or any other medical issues. (Doc. 118-3, Mental Health Records).

XI.   ***Facts as they relate to Plaintiff's personal injury claims.***

52. Plaintiff never filed a personal injury claim regarding his teeth or any dental condition at Norton Correctional Facility from January 2006 to February 2014. (Ex. G, Ross Aff., at ¶ 5);

53. Plaintiff has not submitted any personal injury claim regarding his teeth or any alleged dental condition to the Secretary of Corrections from March 2011 to February 2014. (Ex. H, Burris Aff., at ¶ 4).

## ISSUES PRESENTED

**I.    Whether, under the Prison Litigation Reform Act, Plaintiff exhausted all available administrative remedies when he failed to file a personal injury claim as required under K.A.R. § 44-16-104a?**

**II.   Whether Defendants Pryor, Deere, Peterson, Parks, and Bryan are entitled to judgment as a matter of law because there is no genuine dispute regarding their lack of personal involvement in any alleged constitutional deprivation?**

**III.  Whether Defendants are entitled to qualified immunity because Plaintiff cannot show that they violated Plaintiff's clearly established constitutional rights.**

**IV.   Whether Defendants are entitled to Eleventh Amendment Immunity for Plaintiff's money damages claims against him in his official capacity?**

## ARGUMENT AND AUTHORITIES

Defendant is entitled to judgment as a matter of law for four reasons: (1) Plaintiff failed to exhaust all available administrative remedies, (2) he cannot demonstrate Defendants personally participated in the claimed constitutional violations, (3) Defendants are entitled to qualified immunity because Plaintiff cannot show a violation of his clearly established constitutional rights, and (4) Defendants are entitled to sovereign immunity with regard to Plaintiff's claims against them in their official capacities.

## Summary Judgment Standard

Summary judgment is proper, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A material fact is one that might affect the outcome of the suit under the governing law." *Farthing v. City of Shawnee*, 39 F.3d 1131 (10th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)) (internal quotes omitted). A "genuine" factual dispute requires more than a mere scintilla of evidence. *Anderson*, 477 U.S. at 252.

The moving party has the initial burden of demonstrating that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once this burden is met, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). The nonmoving party may not rest on its pleadings but must set forth specific facts. *Id.*

Summary judgment may be granted if the nonmoving party's evidence is merely colorable or is not significantly probative. *Anderson*, 477 U.S. at 250-51. "In response to a

motion for summary judgment, a party cannot rest on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

When a qualified immunity defense is asserted at summary judgment, courts view the summary judgment standard in a different light. *Rojas v. Anderson*, No. 12-1283, 2013 WL 3389450, at *2 (10th Cir. July 9, 2013).

> When a defendant asserts a qualified immunity defense, the burden shifts to the plaintiff to satisfy a strict two-part test: first, the plaintiff must show that the defendant's actions violated a constitutional or statutory right; second, the plaintiff must show that this right was clearly established at the time of the conduct at issue. If, and only if, the plaintiff meets this two-part test does a defendant then bear the traditional burden of the movant for summary judgment showing that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law.

*Id.* (internal citations and quotes omitted).

The court should construe a *pro se* plaintiff's complaint liberally. *Northington v. Jackson*, 973 F.2d 1518, 1520-1521 (10th Cir. 1992). However, a *pro se* litigant is held to the same summary judgment standards as other litigants. *Hall v. U.S. Air Force*, 848 F. Supp. 926, 929 (D. Kan. 1994).

## I.   Plaintiff failed to exhaust all available administrative remedies.

Defendants are entitled to summary judgment because there is no genuine dispute that Plaintiff failed to exhaust all available administrative remedies as required by the Prison Litigation Reform Act ("PLRA"). Specifically, Plaintiff failed to file a personal injury claim as required by K.A.R. § 44–16–104a. (Ex. G, Ross Aff., at ¶ 5); (Ex. H, Burris Aff. at ¶ 4).

Under the PLRA, an inmate must properly exhaust all available administrative remedies before filing a lawsuit about prison conditions. 42 U.S.C. § 1997e(a). Proper exhaustion requires "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007).

> For Kansas state prisoners, the administrative remedies require the inmate to seek an informal resolution with personnel who work with the inmate on a daily basis. K.A.R. § 44–15–101(b). If the informal resolution is unsuccessful, the inmate must progress through a three-level process that includes submitting a grievance report form to (1) the appropriate unit team member, (2) the warden of the facility, and (3) the office of the secretary of corrections. K.A.R. § 44–15–101(d). The procedure to follow at each level is described in detail in K.A.R. § 44–15–102. The procedure includes a response deadline for each level, and an inmate may progress to the next level of the process if a timely response is not received unless an extension of the response time is agreed to in writing by the inmate. K.A.R. § 44–15–101b.
>
> The Kansas regulations also include a process for a personal injury claim. Specifically, the inmate must file a personal injury claim with the facility and the secretary of corrections within ten calendar days of the incident. K.A.R. § 44–16–104a. Importantly, the requirements in this section apply regardless of whether the inmate pursues a grievance pursuant to § 44–15–101. K.A.R. § 44–16–104a(c).

*Sharrock v. Stephens*, 10-CV-3210-CM/SAC, 2011 WL 5526444, *1 (D. Kan. Nov. 14, 2011), as amended (Nov. 15, 2011).

In this case, Plaintiff failed to exhaust all available administrative remedies because he failed to file any personal injury claim regarding his alleged dental condition as required under K.A.R. § 44–16–104a. (Ex. G, Ross Aff., at ¶ 5); (Ex. H, Burris Aff. at ¶ 4). Defendant is entitled to summary judgment because there is no dispute as to Plaintiff's failure to file the required personal injury claim prior to filing this action.

## II.     Defendants did not personally participate in the alleged constitutional deprivation.

Summary judgment is also proper in this case because Defendants did not personally participate in the alleged deprivation of Plaintiff's constitutional right. In order for liability to arise under § 1983, a defendant's direct personal responsibility for the claimed deprivation of a constitutional right must be established. *Schneider v. City of Grand Junction Police Dept.*, 717 F.3d 760, 768 (10th Cir. 2013). A plaintiff must allege some affirmative act or conduct of the defendant that is causally connected to the alleged deprivation. *See Dodds v. Richardson*, 614 F.3d 1185, 1202 (10th Cir. 2010) *cert. denied*, 131 S. Ct. 2150 (U.S. 2011).

Plaintiff's claims in this suit are based on Defendants' alleged deliberate indifference to a substantial risk of serious harm in violation of his Eighth Amendment rights. However, none of the remaining defendants were told by medical staff at LCF that any orthodontic procedure or treatment or other medical treatment was medically necessary for Plaintiff's alleged dental condition or to preserve Plaintiff's life. (Ex. A at ¶ 4); (Ex. B at ¶ 4); (Ex. C at ¶ 4); (Ex. D at ¶ 4); (Ex. E at ¶ 6); (Ex. F, Murray Aff. ¶ ¶ 5-7). None of the remaining defendants attended or participated in any meeting in which Plaintiff's alleged dental or any medical condition was discussed. (Ex. A at ¶ 5); (Ex. B at ¶ 5); (Ex. C at ¶ 5); (Ex. D at ¶ 5); (Ex. E at ¶ 5); (Ex. F, Murray Aff. at 5-6); (Doc. 118-1, Dental Records); (Doc. 118-2, Plaintiff's medical records); (Doc. 118-3, Plaintiff's mental health records). None of the Defendants ever had any encounter with Plaintiff in which they observed Plaintiff had a serious medical or dental condition or that he was in pain. (Ex. A at ¶ 6); (Ex. B at ¶ 6); (Ex. C at ¶ 6); (Ex. D at ¶ 6); (Ex. E at ¶ 7).

Plaintiff's allegations to the contrary are unsupportable by evidence because Plaintiff does not have personal knowledge of the meetings he alleged took place or alleged discussions between medical staff and defendants. His allegations merely amount to speculations that are

insufficient to preclude summary judgment. *Self v. Crum*, 439 F.3d 1227, 1236 (10th Cir. 2006) ("Inferences supported by conjecture or speculation will not defeat a motion for summary judgment.").

Moreover, "[a] plaintiff's difference of opinion concerning the medical treatment he received does not support a claim of cruel and unusual punishment." *Pearson v. Simmons*, CIV. A. 95-3006-GTV, 1998 WL 154552 (D. Kan. Mar. 17, 1998) (citing *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir.1993)). Even if Defendants received communications or grievances from Plaintiff, these communications would not have put Defendants on notice that Plaintiff had a serious medical condition.

None of the remaining Defendants have the authority to decide when an inmate needs orthodontic procedures for medical or mental health reasons. Internal Management Policy and Procedure ("IMPP") number 10-115 provides that "[m]edical and dental orthoses or prostheses and orthodontic devices and other aids to impairment may be provided, as determined by the Departmental Health Authority or designee, when the health or mental health of the inmate would otherwise be adversely affected." (Doc. 118-9 at 1). IMPP 10-116 provides that orthodontics is a dental procedure that is considered elective and not routinely offered. (Doc. 118-9 at 5). IMPP 10-116 further provides that "[d]ental treatment that falls outside of the professional capacity of the facility dentist shall be referred to an appropriate dental specialist upon approval of the Departmental Dental Authority." (Doc. 118-9 at 5). Here, no dentist, mental health, or other medical professional ever determined that orthodontic procedures were required for Plaintiff to prevent adverse effects to his health or mental health. (Ex. F, Murray Aff., at ¶ 3); (Doc. 118-1, Dental Records); (Doc. 118-2 Medical Records); (Doc. 118-3 Mental Health Records). The only reason for such procedure would have been purely for cosmetic purposes.

(Ex. F, Murray Aff., at ¶ 3). Defendants do not have the authority to order such treatment or the expertise to identify the necessity for such treatment when it is not prescribed by a medical or mental health professional.

### a. Defendants Pryor and Deere

Defendant Deere could not have been less involved in the alleged constitutional deprivations at issue in this case. Deere, who was Deputy Warden of Programs at the time of the alleged violations, dealt with contractual agreements between LCF and its providers, oversaw custody classification, visitation, and recreation, and acted as a liaison between the facility and private prison based and non-prison based industries. (Ex. B at ¶ 1). The only reason Defendant Deere is familiar with Plaintiff or Plaintiff's alleged dental condition is because of this lawsuit. (*Id.* at ¶ 2). Defendant Deere never received correspondence from Plaintiff regarding his alleged dental condition until he filed this lawsuit, never attended any meeting in which Plaintiff's medical or dental condition was discussed, and never encountered Plaintiff in person while Plaintiff was housed at LCF. (*Id.* at ¶ ¶ 2, 3). Plaintiff cannot produce evidence to demonstrate Defendant Deere's personal involvement in the alleged constitutional violation.

Warden Pryor is only familiar with Plaintiff and his alleged medical condition because he was named as a defendant in this lawsuit and because Warden Pryor signed a response to Plaintiff's grievance appeal complaining about his teeth. (Ex. A at ¶ ¶ 2-3). Pryor does not recall ever encountering Plaintiff in person while he was housed at LCF. (Ex. A at ¶ 2). In any event, Pryor never had any encounter with Plaintiff while he was at LCF in which the Pryor observed that Plaintiff had a serious medical or dental condition or that he was in pain. (*Id.* at ¶ 6). Plaintiff also never told Warden Pryor in person that he was in pain or had a medical or dental condition.

(*Id.*). Like all other remaining defendants in this case, no medical staff told Defendants Deere or Pryor that Plaintiff needed any medical or dental treatment with regard to his teeth. (*Id.* at ¶ 4).

The only involvement Warden Pryor had with Plaintiff's alleged dental condition was the denial of Plaintiff's grievance appeal, which is insufficient to demonstrate personal involvement as required by § 1983. The "denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009); *see also Sloan v. McCoy*, No. CIV-10-387-D, 2010 WL 4923925, at *7-8 (W.D. Okla. Oct. 27, 2010) (entering judgment for defendants where inmate failed to establish personal involvement beyond denial of grievance). For these reasons, summary judgment should be granted as to Defendants Deere and Pryor.

### b. Defendant Peterson

Defendant Peterson's only contact with Plaintiff with regard to Plaintiff's alleged dental condition has been Defendant's review of grievances Plaintiff filed and any correspondence Plaintiff sent to the LCF Warden. (Ex. C at ¶ 2). Defendant Peterson was aware of Mr. Conley's complaints about his alleged dental condition because he reviewed grievances Plaintiff filed about the alleged condition. (*Id.* at ¶ 3). Defendant Peterson did nothing to deny Plaintiff medical care for any alleged dental condition. In fact, in response to Plaintiff's grievance about his teeth, Peterson contacted Correct Care Solutions staff and Unit Team Manager Andrew Parks to ensure a dental appointment was made for Plaintiff. (*Id.*). Plaintiff cannot establish personal involvement in any alleged constitutional violation, beyond review of grievances, by Defendant Peterson. *See Gallagher*, 587 F.3d at 1069; *see also Sloan*, 2010 WL 4923925, at *7-8.

### c.  Defendant Parks

Defendant Parks is familiar with Plaintiff because Plaintiff was housed in one of the units Defendant Parks was assigned to. (Ex. D at ¶ 2). Defendant Parks also reviewed and responded to any grievance or form 9 regarding Plaintiff's alleged dental condition that he filed while he was assigned to Parks's unit caseload. (*Id*.). Defendant Parks was aware of Plaintiff's complaints about his alleged dental condition because Plaintiff filed grievances and form 9s regarding his alleged dental condition while he was assigned to Parks's unit caseload. (*Id*. at ¶ 3). After Plaintiff made Parks aware of his complaints and after Parks consulted with medical staff, Parks informed Plaintiff that the orthodontic procedure Plaintiff desired was an elective cosmetic procedure not provided by Correct Care Solutions (CCS), the Kansas Department of Corrections contract medical provider at the time Plaintiff was housed at LCF. (*Id*.). Much like Defendant Peterson, Defendant Parks had no personal involvement in any alleged constitutional violation, beyond review and denial of grievances and communicating with KDOC's medical provider about whether any procedure was prescribed. *See Gallagher*, 587 F.3d at 1069; *see also Sloan*, 2010 WL 4923925, at *7-8.

### d.  Defendant Bryan

Defendant Bryan was familiar with Plaintiff because he was an inmate who was housed in medium custody at LCF, and at that time the medium grounds area was used for inmate visitation for medium custody inmates. (Ex. E at ¶ 2). Defendant Bryan was assigned to medium grounds crew at the time Plaintiff was housed at LCF. (*Id*. at ¶ 1). Defendant Bryan was not aware of any medical condition that Plaintiff had while he was housed at LCF or that Plaintiff had filed any grievances or any other form of complaint regarding a dental medical condition. (*Id*. at ¶¶ 3-4); (Ex. F, Murray Aff., at ¶ 5).

Defendant Bryan never filed a disciplinary report against Plaintiff in response to a complaint about a medical or dental condition. (Ex. E at ¶ ¶ 4, 8). Defendant Bryan did file two disciplinary reports against Plaintiff while he was at LCF. (*Id*. at 8). Bryan filed the first disciplinary report as a result of observing Plaintiff's theft of paper towels and for his failure to obey the order to return to his quarters on September 16, 2011. (*Id*.); (Doc. 118, *Martinez* Report at 8-9); (Doc. 118-4 at 4). Bryan filed the second disciplinary report charging Plaintiff with disobeying orders, avoiding an officer and insubordination or disrespect as a result of an encounter Bryan had with Plaintiff in the dining room at approximately 11:15 a.m. on November 7, 2011. (Ex. E at ¶ 8); (Doc. 118, Martinez Report at 9); (Doc. 118-5 at 4). At the time of the disciplinary reports, Officer Bryan was not aware of any medical or dental condition that Plaintiff had or that Plaintiff had filed grievances concerning any medical condition. (Ex. E at ¶ 8).

After hearings on each disciplinary report, Plaintiff was convicted of all charges. (Doc. 118 at 9-10); (Doc. 118-4 at 5); (Doc. 118-5 at 5). The convictions were upheld by the Secretary of Corrections on appeal. (Doc. 118 at 9-10); (Doc. 118-4 at 13); (Doc. 118-5 at 13). Plaintiff made no claims during his appeals of the convictions that the disciplinary reports were filed in retaliation for filing a grievance or that Officer Bryan made comments about his grievances or dental condition. (*Id*.).

Defendant Bryan had as little personal involvement in the alleged constitutional violations as any of the defendants remaining in this case because he had no knowledge whatsoever of a dental condition or even complaints by Plaintiff about his alleged condition. The disciplinary reports Plaintiff alleges were filed in response to his complaints were clearly filed due to legitimate disciplinary violations by Plaintiff. Plaintiff can demonstrate no link between

the disciplinary reports and his alleged dental condition or complaints and can show no personal involvement by Defendant Bryan and a deliberate disregard of a known serious medical condition.  For these reasons, Defendant Bryan, along with all other Defendants, should be granted summary judgment.

### III. Defendants are entitled to qualified immunity because Plaintiff cannot demonstrate a clearly established constitutional violation.

"Qualified immunity is meant to give government officials a right, not merely to avoid standing trial, but also to avoid the burdens of such pretrial matters as discovery, as inquiries of this kind can be peculiarly disruptive of effective government." *Garrett v. Stratman*, 254 F.3d 946, 951 (10th Cir. 2001) (quotations omitted) (quoting *Behrens v. Pelletier*, 516 U.S. 299, 308 (1996)). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*, 134 S. Ct. 3, 5, 187 L. Ed. 2d 341 (2013) (quotations omitted) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

"When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established." *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009). "This is a heavy two-part burden." *Rojas v. Anderson*, No. 12-1283, 2013 WL 3389450, at *2 (10th Cir. July 9, 2013) (quoting *Martinez v. Carr,* 479 F.3d 1292, 1294 (10th Cir.2007)). The Court, in its sound discretion, may consider these prongs in the order it chooses. *Weise v. Casper*, 593 F.3d 1163, 1167 (10th Cir. 2010) (citing *Pearson v. Callahan*, 555 U.S. 223 (2009)).

A "plaintiff must do more than identify in the abstract a clearly established right and allege that the defendant has violated it; she must articulate the clearly established constitutional

right and the defendant's conduct which violated the right with specificity." *Id.* (quotations omitted). The "relevant inquiry is whether the law put officials on fair notice that the described conduct was unconstitutional." *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007); *see also Stewart v. Beach*, 701 F.3d 1322, 1329-30 (10th Cir. 2012).

Plaintiff cannot show that his clearly established rights under the Eighth Amendment were violated. "A prison official violates an inmate's clearly established Eighth Amendment rights if he acts with deliberate indifference to an inmate's serious medical needs—if he 'knows of and disregards an excessive risk to inmate health or safety.'" *Garrett v. Stratman*, 254 F.3d 946, 949 (10th Cir. 2001) (quoting *Farmer v. Brennan*, 511 U.S. 825, 833–34 (1994)). To establish a violation, an inmate must show both subjective and objective elements. *Id.* "The subjective component—deliberate indifference—is met if the prison official both was 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Id.*

The objective component is met if the deprivation is "sufficiently serious." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (Quoting *Farmer*, 511 U.S. at 834). The Tenth Circuit has defined "sufficiently serious" to mean that "the condition 'has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001) (quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir .1999)).

Perhaps most importantly, "a mere difference of opinion between the prison's medical staff and the inmate as to the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment." *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980).

Plaintiff cannot meet his burden of overcoming Defendants' qualified immunity defense. The burden rests with Plaintiff to come forward with sufficient evidence and case law to satisfy the two-part test of qualified immunity. *See Rojas v. Anderson*, No. 12-1283, 2013 WL 3389450, at *2 (10th Cir. July 9, 2013) ("If, and only if, the plaintiff meets this two-part test does a defendant then bear the traditional burden of the movant for summary judgment . . .").

Plaintiff cannot meet this burden because it is apparent from affidavits and medical records submitted by Defendants that Plaintiff had no medical condition that was diagnosed by a physician as mandating treatment or so obvious that even a lay person would easily recognize the necessity for a doctor's attention. (Ex. A at ¶ ¶ 4-5); (Ex. B at ¶ ¶ 4-6); (Ex. C at ¶ ¶ 4-6); (Ex. D at ¶ ¶ 4-6); (Ex. E at ¶ ¶ 5-7); (Ex. F, Murray Aff. ¶ ¶ 5-7) (Doc. 118-1, Dental Records); (Doc. 118-2, Plaintiff's medical records); (Doc. 118-3, Plaintiff's mental health records). Defendant Peterson even attempted to get help for Plaintiff in response to Plaintiff's grievance about his teeth by helping him obtain a dental appointment, despite not knowing of a serious medical condition. (Ex. C., Peterson Aff., at ¶ 3). This conduct by Defendant Peterson is anything but deliberate indifference to a known serious medical condition. Moreover, the fact that Plaintiff subjectively believes he has a serious medical need is not enough to support a claim for deliberate indifference to known serious medical needs under the Eighth Amendment. *Olson*, 9 F.3d at 1477. For these reasons, Defendants are entitled to qualified immunity with regard to Plaintiff's Eighth Amendment claim.

### IV. Plaintiff additionally cannot show a constitutional violation with regard to his mental health treatment.

Plaintiff cannot demonstrate Defendants' personal participation in any alleged denial of mental health treatment and also cannot show a violation of his clearly established constitutional rights with regard to his mental health treatment. Although it does not appear Plaintiff is

claiming a violation of his Eighth Amendment rights due to failure to provide mental health treatment, Defendants will address that claim herein. Plaintiff consistently received mental health services during the time he complained about his alleged dental condition. (Doc. 118-3, Mental Health Records). Plaintiff does not allege that he was denied mental health treatment by any of the Defendants. (Doc. 68, Amended Compl.). Defendant Parks, who was aware of Plaintiff's grievances about his alleged dental condition because he was Plaintiff's unit team manager, requested mental health services for Plaintiff. (Doc. 118, *Martinez* Report at 4-7); (Doc. 118-3, Mental Health Records, at 1). Plaintiff saw several social workers and a psychiatrist from August 2011 to June 2012. (Doc. 118, *Martinez* Report, at 4-7); (Doc. 118-3, Mental Health Records). Plaintiff complained about his teeth to the mental health professionals he met with while at Lansing Correctional Facility. (Doc. 118-3, Mental Health Records). The mental health professionals he met with developed a treatment plan than included bimonthly individual counseling. (*Id*.). On June 19, 2012 Plaintiff refused to attend his mental health appointments. (*Id*. at 28). At no time did a mental health professional state orthodontic procedures were necessary to address Plaintiff's mental health or any other medical issues. (Doc. 118-3, Mental Health Records).

For these reasons, Defendants are entitled to qualified immunity for any claim that can be construed as an alleged denial of mental health treatment.

### V.   Eleventh Amendment Immunity bars Plaintiff's claims against Defendants in their official capacities.

Plaintiff's § 1983 claims for money damages against Defendants in their official capacities are barred by the Eleventh Amendment doctrine of sovereign immunity, and should be dismissed for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).  *Fent v. Oklahoma Water Resources Bd*, 235 F.3d 553, 559 (10th Cir. 2000). As employees of the Kansas

Department of Corrections during the time in question, Defendants share the State's immunity from money damages for suits against them in their official capacities. *See Frazier v. Simmons*, 254 F.3d 1247, 1254 (10th Cir. 2001). For this reason, the Court should grant Defendant's Motion for Summary Judgment with regard to Plaintiff's claims for money damages against Defendants in their official capacities.

## CONCLUSION

Defendants are entitled to judgment as a matter of law because there are no issues of material fact in dispute regarding Plaintiff's failure to exhaust all available administrative remedies and Defendants' entitlement to qualified immunity. In addition, this Court should grant summary judgment because Defendants are entitled to sovereign immunity for claims for money damages against them in their official capacities. For these reasons, Defendants respectfully request the Court grant their Motion for Summary Judgment.

Date: March 28, 2014

                    Respectfully Submitted,

                    OFFICE OF ATTORNEY GENERAL
                    DEREK SCHMIDT

By:     s/ Whitney L. Casement
                    Whitney L. Casement, No. 25466
                    Assistant Attorney General
                    120 SW 10th Ave., 2nd Floor
                    Topeka, KS 66612
                    Phone: 785-296-2779
                    Fax: 785-291-3767
                    E-mail: whitney.casement@ksag.org
                    *Attorney for Defendant*

## **CERTIFICATE OF SERVICE**

This is to certify that a copy of the above and foregoing Memorandum in Support of Defendants' Motion for Summary Judgment was filed with the Court via the CM/ECF system, and a copy served on Plaintiff by depositing the same in the United States Mail, first class postage prepaid, this 28th day of March, 2014, addressed as follows:

        Anthony D. Conley, No. 60437
        El Dorado Correctional Facility-Central
        P.O. Box 311
        El Dorado, KS 67042
        *Pro se inmate*

                                  /s/ Whitney L. Casement
                                  Whitney L. Casement