## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

ANTHONY DEAN CONLEY,

        Plaintiff,

v.

                                        Case No. 11-3200-DDC-KGS

REX PRYOR, et al.,

        Defendants.

---

## MEMORANDUM AND ORDER

Plaintiff brings this lawsuit under 42 U.S.C. § 1983 against numerous individuals alleging that they violated the Eighth Amendment by failing to provide him proper dental care during his incarceration at the Lansing Correction Facility ("LCF"). This matter comes before the Court on defendants Rex Pryor, Kyle Deere, Brett Peterson, Andrew Parks, and Daniel Bryan's Motion for Summary Judgment (Doc. 129) and Defendants Correct Care Solutions and Toby Harkins' Motion to Quash Service and/or to Dismiss (Doc. 143). For the reasons set forth below, the Court grants both motions.

### I.      Procedural Background

Plaintiff filed this action on November 17, 2011, alleging various claims under 42 U.S.C. § 1983 against the following defendants: David R. McKune, Kyle Deere, Rex Pryor, Ellen Bartz, Joe Pantano, Dr. Kent Murr[a]y, Brett Peterson, Ray Roberts, Governor Sam Brownback, Jerry Boyle, Correct Care Solutions, LLC ("CCS"), Daniel Bryan, and Andrew Parks. (Doc. 1) Plaintiff sued all defendants in their official and individual capacities except for Governor Brownback, who was sued only in his individual capacity. (*Id.*) On September 12, 2012, plaintiff filed an Amended Complaint naming David Lawhorn as an additional defendant. (Doc.

1

68)  The Court dismissed plaintiff's lawsuit on March 27, 2013, for failing to state a claim for relief under 42 U.S.C. § 1983.  (Doc. 84)

Plaintiff filed a Notice of Appeal.  (Doc. 87)  The Tenth Circuit affirmed the district court's decision in part but reversed the district court's dismissal of plaintiff's Eighth Amendment claim alleging deliberate indifference to his serious dental needs as alleged against defendants McKune, Deere, Pryor, Parks, Bartz, Pantano, Peterson, and Bryan.  (Doc. 92 at 10–13)  The Tenth Circuit affirmed the dismissal of defendants Roberts, Brownback, Boyle, Lawhorn, Murry, and CCS.  (*Id.* at 11–12)

On remand, plaintiff filed a motion to substitute certain defendants in their official capacities under Fed. R. Civ. P. 25(d)(1).  (Doc. 103)  Plaintiff sought to substitute David R. McKune (the previous warden at LCF) with Rex Pryor (the current warden at LCF) and Ellen Bartz (previous Health Services Administrator, CCS, at LCF) with Toby Harkins (then current Health Services Administrator, CCS, at LCF).  (*Id.*)  The Court granted plaintiff's motion and ordered the Clerk of the Court to substitute Pryor with McKune and Harkins for Bartz "only with regard to the allegations against these two individuals in their official capacity."  (Doc. 134 at 2)  Plaintiff's claims against McKune and Bartz in their individual capacities remain intact.  (*Id.*)

On April 9, 2014, the Clerk of the Court issued a summons for defendant Harkins stating that the summons should be addressed "in care of" the registered agent for CCS.  (Doc. 139 at 2)  The United States Marshal's Service served this summons on Harkins by mailing it to the registered agent of CCS, and it was returned as executed.  (Doc. 139)

On May 5, 2014, CCS and Harkins filed a Motion to Quash Service and/or to Dismiss based on a lack of personal jurisdiction, insufficient process, and insufficient service of process.  (Doc. 143)  D. Kan. Rules 6.1(d)(2) and 7.1(c) required plaintiff to respond to CCS and Harkins'

motion within 21 days, or by May 26, 2014.  The deadline for plaintiff to respond long ago

passed, and plaintiff has failed to file any response to CCS and Harkins' motion.

The Court first addresses below CCS and Harkins' Motion to Quash Service and/or to

Dismiss (Doc. 143).  The Court next considers the Motion for Summary Judgment filed by

defendants Pryor, Deere, Peterson, Parks, and Bryan (Doc. 129).  Plaintiff filed a Memorandum

in Opposition (Doc. 137) in response to the summary judgment motion, and defendants Pryor,

Deere, Peterson, Parks, and Bryan submitted a Reply (Doc. 143).  Thus, the summary judgment

motion is fully briefed for the Court's consideration below.

## II.      Motion to Quash Service and/or to Dismiss

As noted above, plaintiff has not responded to CCS and Harkins' Motion to Quash and/or to

Dismiss.  Under D. Kan. Rule 7.4(b), a party "who fails to file a responsive brief or

memorandum within the time specified in D. Kan. Rule 6.1(d) waives the right to later file such

brief or memorandum" unless there is a showing of excusable neglect.  This rule also provides

"[i]f a responsive brief or memorandum is not filed within the D. Kan. Rule 6.1(d) time

requirements, the court will consider and decide the motion as an uncontested motion.

Ordinarily, the court will grant the motion without further notice."  D. Kan. Rule 7.4(b).

The Court recognizes that plaintiff brings this action pro se.  But a plaintiff's pro se status

does not excuse him from complying with the Court's rules or facing the consequences of

noncompliance.  *Ogden v. San Juan Cnty.*, 32 F.3d 452, 455 (10th Cir. 1994) (citing *Nielsen v.

Price*, 17 F.3d 1276, 1277 (10th Cir. 1994)).  Thus, as a consequence of plaintiff's failure to

respond timely to CCS and Harkins' motion, the Court considers the motion as uncontested

under D. Kan. Rule 7.4(b).  Although the Court could grant the motion without further

discussion, it addresses the merits of the motion below.

First, CCS argues that the Court should quash the summons to the extent it was directed at CCS.  The United States Marshal's Service served the registered agent of CCS with Harkins' summons on April 14, 2014, but CCS argues that CCS—itself—is not a proper defendant in this lawsuit because the Court has already dismissed CCS from this case and the Tenth Circuit affirmed that dismissal.  (Docs. 84, 92)  The Court agrees that CCS is no longer a defendant in this case because the Court previously dismissed it from the lawsuit.  Thus, to the extent the summons is construed as effecting service upon CCS, the Court quashes the summons and dismisses CCS from this lawsuit.

Second, CCS and Harkins argue that to the extent plaintiff was attempting to serve Harkins through the registered agent of CCS, the service failed to comport with the requirements of the Federal Rules of Civil Procedure.  Therefore the Court should dismiss Harkins under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction, Fed. R. Civ. P. 12(b)(4) for insufficient process, and Fed. R. Civ. P. 12(b)(5) for insufficient service of process.

Fed. R. Civ. P. 4 governs service of process in federal actions.  *Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987).  The personal service requirements of this rule "serve[ ] two purposes:  notifying a defendant of the commencement of an action against him and providing a ritual that marks the court's assertion of jurisdiction over the lawsuit."  *Okla. Radio Assocs. v. F.D.I.C.*, 969 F.2d 940, 943 (10th Cir. 1992) (citations omitted).  "Rule 4 service of process provides the mechanism by which a court having venue and jurisdiction over the subject matter of an action asserts jurisdiction over the person of the party served."  *Id.* (citing *Omni Capital Int'l*, 484 U.S. at 104 (further citations omitted)).

"A federal court lacks personal jurisdiction over a defendant if service of process is insufficient under Rule 4."  *Hagan v. Credit Union of Am.*, No. 11-1131-JTM, 2011 WL

6739595, at *1 (D. Kan. Dec. 22, 2011) (citation omitted).  A Rule 12(b)(4) motion to dismiss based on insufficient process "constitutes an objection to the form of process or the content of the summons rather than the method of its delivery," while a Rule 12(b)(5) motion to dismiss based on insufficient service of process "challenges the mode or lack of delivery of a summons or complaint."  *Oltremari by McDaniel v. Kan. Soc. & Rehabilitative Serv.*, 871 F. Supp. 1331, 1349 (D. Kan. 1994) (citations and internal quotation marks omitted).  When a defendant moves to dismiss based on insufficient service of process under Rule 12(b)(5), the burden shifts to the plaintiff to make a prima facie case that process was served properly.  *Fisher v. Lynch*, 531 F. Supp. 2d 1253, 1259 (D. Kan. 2008) (citation omitted).  When considering whether service was sufficient, a court may consider any "affidavits and other documentary evidence" submitted by the parties and must resolve any "factual doubts" in favor of the plaintiff.  *Id.* (citation omitted).

CCS and Harkins argue that plaintiff failed to serve Harkins personally as required by Rule 4(e).  That rule provides that a plaintiff may accomplish personal service by:  (1) delivery on the individual personally, (2) delivery at the individual's dwelling or usual place of abode, (3) delivery on the individual's authorized agent, or (4) following Kansas state laws governing service.  *See* Fed. R. Civ. P. 4(e).  Plaintiff has failed to make service under any of the four methods permitted in Rule 4(e).  Here, the United States Marshal's Service mailed the summons for Harkins to the registered agent for CCS, and it was returned executed.[1]  While Rule 4 allows

---

[1]     The fact the summons was returned executed does not alone serve as sufficient evidence that plaintiff properly served Harkins with process.  A signed return of service constitutes prima facie evidence of proper service, but it "can be overcome only by strong and convincing evidence."  *Homer v. Jones-Bey*, 415 F.3d 748, 752 (7th Cir. 2005) (citations and internal quotation marks omitted); *see also Home-Stake Prod. Co. v. Talon Petroleum, C.A.*, 907 F.2d 1012, 1017 (10th Cir. 1990) (noting that a district court may have determined that defendant's declaration of improper service was "insufficient to overcome the prima facie case of proper service established by the affidavit and return of service"); *Oltremari*, 871 F. Supp. at 1349–50.  Once a plaintiff makes a prima facie showing of proper service, the burden shifts to the defendant to demonstrate that he did not receive service.  *Homer*, 415 F.3d at 752; *see also Oltremari*, 871 F. Supp. at 1350 ("'Although the return of service is strong evidence of the facts

for service upon an individual's authorized agent, there is no evidence that CCS's registered agent was also an authorized agent for Harkins.  *See Free v. Okla. Dep't of Corr.*, No. Civ.-13-0087-F, 2014 WL 347627, at *4 (W.D. Okla. Jan. 30, 2014) (plaintiff failed to demonstrate that the individual who signed the certified mail receipt and accepted delivery of the summons was authorized by the defendant or by law to do so); *see also Nichols v. Schmidling*, No. 10-2086-JAR, 2011 WL 5837173, at *3 (D. Kan. Nov. 21, 2011) (service upon defendant's counsel who has not been authorized or appointed to receive service of process on behalf of defendant is insufficient service of process).  Thus, the Court agrees that service upon the registered agent of CCS, who was not an authorized agent of Harkins, constitutes insufficient service of process on Harkins under Rule 4(e).

Plaintiff has also failed to make service under Kansas state law.  Kansas law provides that service upon an individual must be made: (1) by serving the individual or (2) by serving an agent authorized by appointment or by law to receive service of process.  K.S.A. § 60-304(a).  The Kansas statute also states that:

> Service by return receipt delivery shall be addressed to an individual at the individual's dwelling house or usual place of abode and to an authorized agent at the agent's usual or designated address.  If the sheriff, party or party's attorney files a return of service stating that the return receipt delivery to the individual at the individual's dwelling or usual place of abode was refused or unclaimed and

---

stated therein, it is not conclusive and may be controverted upon a showing that the return is inaccurate.'" (quoting 4A Charles A. Wright et al., *Federal Practice and Procedure* § 1130 (1984))).

Here, CCS and Harkins deny that Harkins received service because the Marshal's Service served the summons by certified mail on the registered agent of CCS, not an agent of Harkins, and at the time of service, Harkins was no longer employed by CCS.  This evidence is sufficient to overcome the prima facie evidence of proper service established by the return of service.  *See Rutter v. Louis Dreyfus Corp.*, 181 F. Supp. 531, 533 (E.D. Pa. 1960) (the Marshal's return of service stating that service was made on an agent of defendant was not conclusive evidence of service in light of the uncontradicted affidavits denying an agency relationship); *but cf. Oltremari*, 871 F. Supp. at 1350 (defendants failed to proffer an affidavit or other strong and convincing evidence of improper service other than bare allegations which were insufficient to overcome the evidence of the Marshal's Service's signed return of service showing defendants had been served).

that a business address is known for the individual, the sheriff, party or party's attorney may complete service by return receipt delivery, addressed to the individual at the individual's business address.

*Id.*  Plaintiff has failed to serve Harkins as required by this Kansas statute because he served neither Harkins individually nor his authorized agent.  As already explained, there is no evidence that CCS's registered agent was an authorized agent of Harkins entitled to accept service on his behalf.  Further, Harkins did not "refuse or unclaim" service, and therefore it was inappropriate to serve Harkins at a business address.  And, even if this part of the statute applied, CCS did not employ Harkins when the Marshal's Service served CCS's registered agent in April 2014.  CCS attests that it no longer employed Harkins as of January 1, 2014.  Aff. of Stephanie Popp (Doc. 143-1) at ¶ 3.  Thus, the address on the summons listing CCS's registered agent was not a business address for Harkins at the time of service.

Because plaintiff has not responded to CCS and Harkins' motion, he has failed to come forward with evidence that Harkins was served with process as required by Rule 4.  Therefore, plaintiff fails to meet his burden of showing that Harkins was served properly.  *See Fisher*, 531 F. Supp. 2d at 1259 (plaintiff bears the burden to make a prima facie case that process was served properly).  The Court therefore grants the motion to quash based on insufficient service of process under Rule 12(b)(5).

The Court recognizes, however, that some of the fault for failing to serve Harkins properly lies with the Court and the Marshal's Service.  Because plaintiff proceeds in forma pauperis here, the district court is required to serve process for plaintiff.  *See Kelly v. Wilson*, 426 F. App'x 629, 631 (10th Cir. 2011) (citing *Olsen v. Mapes*, 333 F.3d 1199, 1204 (10th Cir. 2003)).  In the order granting plaintiff's motion to substitute Harkins as a defendant, Judge Sebelius directed the Clerk of the Court to prepare waiver and service forms for Harkins in his

official capacity under Fed. R. Civ. P. 4(d) and ordered the United States Marshal's Service to complete service under Fed. R. Civ. P. 4(c)(3).  (Doc. 134 at 2)  Instead of issuing a waiver and service forms, the Clerk of the Court issued a summons directed to Harkins in care of the registered agent of CCS, and the Marshal's Service served the summons for Harkins by certified mail at the registered agent's address.  The Tenth Circuit has recognized that where a district court fails to provide specific instructions about how to correct deficient service of process, "'it is understandable that a pro se litigant might fail to fulfill'" Rule 4's service requirements.  *Kelly*, 426 F. App'x at 632 (quoting *Olsen*, 333 F.3d at 1205).  Moreover, the Court generally should avoid dismissing a lawsuit when service is insufficient but curable.  *Fisher v. Lynch*, 531 F. Supp. 2d 1253, 1269 (D. Kan. 2008) (citations omitted).  In those circumstances, the Court "should quash service and give plaintiff an opportunity to re-serve defendant."  *Id.* (citation omitted).

Nevertheless, in this case, the Court determines that it should dismiss plaintiff's claims against Harkins for an additional, independent reason—his claims against Harkins in his official capacity are moot.  In their motion, CCS and Harkins also request dismissal of the lawsuit under Fed. R. Civ. P. 12(b)(6) arguing that plaintiff's claims against Harkins in his official capacity as Health Services Administrator at LCF fail because Harkins is not currently employed by CCS, and thus he no longer serves as the Health Services Administrator at LCF.  Further, CCS is no longer the health care provider at LCF,[2] and plaintiff is no longer housed as an inmate at

---

[2]     The Kansas Department of Corrections entered into a health care contract with a different provider, Corizon Health, effective January 1, 2014.  *See* http://www.corizonhealth.com/Corizon-News/corizon-awarded-kansas-department-of-corrections-contract.  The Court may take judicial notice of this information found on the internet.  *O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1225 (10th Cir. 2007) (explaining that "[i]t is not uncommon for courts to take judicial notice of factual information found on the world wide web" and holding the district court erred by failing to take judicial notice of a defendant's actual earnings history on the internet).

LCF.[3]  While CCS and Harkins seek a Rule 12(b)(6) dismissal on this basis, the Court addresses this issue as one of mootness which, if shown, deprives the Court of jurisdiction.  *See Cleveland v. Martin*, ___ F. App'x ___, 2014 WL 5368884, at *2 (10th Cir. Oct. 23, 2014) (addressing whether plaintiff's claim was moot because of his prison transfer, even though the parties did not raise the issue, because mootness is jurisdictional (citing *Tandy v. City of Wichita*, 380 F.3d 1277, 1290 n.15 (10th Cir. 2004))).

"'The mootness doctrine provides that although there may be an actual and justiciable controversy at the time the litigation is commenced, once that controversy ceases to exist, the federal court must dismiss the action for want of jurisdiction.'"  *Jordan v. Sosa*, 654 F.3d 1012, 1023 (10th Cir. 2011) (quoting 15 James W. Moore & Martin H. Redish, *Moore's Federal Practice* § 101.90, at 101–237 (3d ed. 2010)).  In the Tenth Circuit, it is "well-settled that a prisoner's transfer out of a prison moots his requests for declaratory or injunctive relief against staff at that prison."  *Nasious v. Colorado*, 495 F. App'x 899, 903 (10th Cir. 2012) (citing *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1311 (10th Cir. 2010)); *see also Jordan*, 654 F.3d at 1027; *Green v. Branson*, 108 F.3d 1296, 1300 (10th Cir. 1997).  "Because a prisoner's transfer or release signals the end of the alleged deprivation of his constitutional rights, an entry of equitable relief in his favor would amount to nothing more than a declaration that he was wronged, and would have no effect on the defendants' behavior towards him."  *Jordan*, 654 F.3d at 1027 (citations, internal quotation marks, and alternations omitted).  "Consequently, courts have routinely dismissed such penitentiary-specific conditions-of-confinement claims as moot."  *Id.* (citations omitted).

---

[3]      On March 18, 2013, plaintiff filed a Notice of Change of Address notifying the Court of his new address at the El Dorado Correction Facility in El Dorado, Kansas.  (Doc. 81)  The docket reflects that plaintiff is housed at this facility currently and thus he is no longer at inmate an LCF.

Here, plaintiff has sued Harkins only in his official capacity as the Health Services Administrator at LCF and seeks only injunctive relief against Harkins. *See* Order (Doc. 134) at 2 (granting plaintiff's motion to substitute Harkins as a defendant in his official capacity only); *see also* Pl.'s Mot. to Correct a Mistake (Doc. 127) (requesting to clarify in his Amended Complaint that plaintiff is suing defendants "in their official capacities for injunctive relief"); Pl.'s Mot. to Modify (Doc. 128) (same); Order (Doc. 140) at 1 (denying plaintiff's motions to correct an alleged error in the Amended Complaint because the record is clear that defendants were sued in their official capacities for injunctive relief). But plaintiff's transfer from LCF to the El Dorado Correctional Facility rendered moot any claim for injunctive relief against Harkins in his official capacity as the Health Services Administrator at LCF. *See Green*, 108 F.3d at 1300; *see also Cleveland*, 2014 WL 5368884, at *2. Thus, the Court lacks jurisdiction over Harkins and grants CCS and Harkins' motion to dismiss Harkins from this action.

## III.   Motion for Summary Judgment

### A.  Pro Se Litigant's Lack of Compliance with Local Rules

In accordance with D. Kan. Rule 56.1(f), defendants Pryor, Deere, Peterson, Parks, and Bryan (hereinafter, "the Moving Defendants") sent plaintiff a "Notice to Pro Se Litigant Who Opposes a Summary Judgment Motion." This notice advised plaintiff that if he did "not respond to the motion for summary judgment on time with affidavits and/or documents contradicting the material facts asserted by the defendant[s], the court may accept defendant[s'] facts as true, in which event [plaintiff's] case may be dismissed and judgment entered in defendant[s'] favor without a trial." (Doc. 131)

In his Opposition, plaintiff has failed to controvert the facts asserted by the Moving Defendants in their Memorandum in Support of Summary Judgment. The Court's local rules

provide that "[a]ll material facts set forth in the statement of the movant will be deemed admitted

for the purpose of summary judgment unless specifically controverted by the statement of the

opposing party." D. Kan. Rule 56.1(a). To controvert facts in the fashion the rule requires, the

nonmoving party must number the facts and "refer with particularity to those portions of the

record upon which the opposing party relies, and if, applicable, state the number of movant's fact

that is disputed." D. Kan. R. 56.1(b)(1). Because plaintiff has not controverted the Moving

Defendants' facts, the Court deems defendants' facts admitted and accepts them as true.

Instead of controverting the Moving Defendants' facts, plaintiff has asserted 119

additional factual statements that he claims are controverted facts. The Moving Defendants have

responded to plaintiff's 119 factual statements, many of which plaintiff fails to support with

evidence in the record, as the Court's local rule requires. *See* D. Kan. Rule 56.1(b)(2) ("If the

party opposing summary judgment relies on any facts not contained in movant's memorandum,

that party must set forth each additional fact in a separately numbered paragraph, supported by

references to the record, in the manner required by subsection (a), above."). Although plaintiff is

a pro se litigant and the Court must construe his filings liberally, the Court will not serve as his

advocate and will not accept as true conclusory allegations unsupported by evidence in the

record. *James v. Wadas*, 724 F.3d 1312, 1315 (10th Cir. 2013) (citations omitted). Also, as

previously noted, plaintiff's pro se status does not excuse him from complying with federal and

local rules. *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) ("This court has repeatedly

insisted that pro se parties follow the same rules of procedure that govern other litigants."

(citations and internal quotation marks omitted)). Thus, the Court does not accept plaintiff's

factual statements that are not supported by proper evidence.[4] But, where the Moving

---

[4]     Factual statements not accepted for this reason include those supported only by plaintiff's
conclusory and self-serving affidavit. Plaintiff submitted an "Affidavit of Truth of Memorandum" stating

Defendants have stated that certain of plaintiff's factual statements are uncontroverted, the Court accepts those unconverted facts as true and incorporates those facts (if they are material) into the statement of uncontroverted facts that follows.

### B. Uncontroverted Facts

The following facts are uncontroverted and stated in the light most favorable to plaintiff, the nonmoving party.

### *The Parties*

Plaintiff currently is an inmate housed at the El Dorado Correctional Facility in El Dorado, Kansas.  Previously, he was housed as an inmate at LCF in Lansing, Kansas.  In this lawsuit, plaintiff alleges that his teeth are overlapped, bucked, crowded, and crooked to the point that he chews holes on the insides of his cheeks causing him pain and interfering with his ability to chew, speak, and breathe.  Plaintiff asserts that the Moving Defendants have failed to provide him proper dental care, and thus have shown deliberate indifference for his serious dental needs, in violation of the Eighth Amendment.

At all times relevant to this case, the Kansas Department of Corrections employed defendant Pryor as acting Warden and Warden at LCF.  As part of his job duties, Pryor was responsible for implementing facility policies and procedures.  Pryor is familiar with plaintiff

---

that he swears under penalty of perjury that the facts in his Memorandum in Opposition to the Moving Defendants' Summary Judgment Motion are truthful (Doc. 137 at 46).  But plaintiff makes several self-serving, conclusory, and unsupported statements that the Court refuses to accept as true.  *See Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991) (a non-movant's affidavit "must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient.").  For example, plaintiff accuses defendant Pryor of forcing him to use unprescribed marijuana to treat his dental condition (Doc. 137 at ¶ 10); he claims that defendants engaged in a "medical cover-up (or medical road block)" of his serious dental condition (*id.* at ¶¶ 39, 77, 80); and he contends that Dr. Murray's opinion that plaintiff did not require dental or orthodontic treatment for medical reasons or to preserve his life are refuted by his sworn Complaint (*id.* at ¶ 72).  None of these statements are supported by any evidence other than plaintiff's self-serving statements.  The Court does not accept plaintiff's self-serving and conclusory statements as true in deciding this summary judgment motion.

because he signed a response to plaintiff's grievance complaining about his teeth.  This grievance represents the only correspondence Pryor received from plaintiff about his alleged dental condition before plaintiff filed this lawsuit.  Pryor does not recall ever encountering plaintiff in person while plaintiff was housed at LCF.  Pryor has never said that he did not have to enforce facility policies, including policies about dental treatment.

The Kansas Department of Corrections employed defendant Deere as Deputy Warden of Programs at LCF at all times relevant to this case.  In this position, Deere's duties and responsibilities included overseeing all LCF contractual agreements, including medical and educational services, overseeing custody classification, visitation, and recreation, and acting as a liaison with private prison based and non-prison based industries.  Deere never encountered plaintiff in person while he was housed at LCF.  Deere never knew about plaintiff's complaints about his alleged dental condition until plaintiff filed this lawsuit.

The Kansas Department of Corrections employed defendant Peterson as a Unit Team Manager and Policy and Compliance Manager at LCF at all times relevant here.  Peterson is familiar with plaintiff because he reviewed grievances plaintiff filed and any correspondence plaintiff sent to the LCF Warden.  Peterson knew about plaintiff's complaints about his alleged dental condition because he reviewed grievances plaintiff filed about the alleged condition.  In response to plaintiff's grievance about his teeth, Peterson contacted CCS staff and Unit Team Manager Andrew Parks to ensure that they scheduled plaintiff for a dental appointment.

The Kansas Department of Corrections employed defendant Parks as a Unit Team Manager at LCF at all times relevant to this case.  Parks knows plaintiff because plaintiff was housed in one of the units assigned to Parks.  Parks knew about plaintiff's complaints about his alleged dental condition because plaintiff filed grievances and form 9s about his alleged dental

condition while plaintiff was assigned to the caseload for Parks' unit and Parks reviewed and responded to those grievances and form 9s.  After plaintiff complained to Parks about his alleged dental condition, Parks consulted with medical staff and reported to plaintiff that the orthodontic procedure plaintiff requested was an elective cosmetic procedure not provided by CCS (which was the contract medical provider for the Kansas Department of Corrections when plaintiff was housed at LCF).

The Kansas Department of Corrections employed defendant Bryan as a Corrections Officer II assigned to medium grounds crew at LCF at all times relevant here.  Bryan knew plaintiff because he was an inmate housed in medium custody at LCF, and at that time, the medium grounds area was used for inmate visitation for medium custody inmates.  Bryan did not know of any medical condition that plaintiff experienced while he was housed at LCF; also, Bryan did not know that plaintiff had filed any grievances or any other form of complaint about an alleged dental condition.  Bryan filed two disciplinary reports against plaintiff while housed at LCF:  (1) he filed the first disciplinary report after he observed plaintiff stealing paper towels and failing to obey an order to return to his quarters on September 16, 2011; and (2) he filed the second disciplinary report charging plaintiff with disobeying orders, avoiding an officer, and insubordination or disrespect after he encountered plaintiff in the dining room at approximately 11:15 a.m. on November 7, 2011.  At the time he filed the disciplinary reports, Bryan did not know of any medical or dental condition that plaintiff experienced; also Bryan did not know that plaintiff had filed grievances about any medical condition.  After hearings on the two disciplinary reports, plaintiff was convicted of all charges.  The Secretary of Corrections affirmed those convictions on appeal.  During his appeals of the convictions, plaintiff never claimed that Bryan had filed the disciplinary reports in retaliation for plaintiff's grievances.

Likewise, plaintiff never claimed that Bryan made comments about his grievances or dental condition.

None of the medical staff at LCF ever told any of the Moving Defendants that an orthodontic procedure or other medical treatment was medically necessary for plaintiff's alleged dental condition or needed to preserve his life. During the time plaintiff was housed at LCF, CCS medical staff there told Parks that the only reason plaintiff needed to undergo orthodontic procedures was for elective cosmetic purposes and not for any medical or pain-management purposes. None of the Moving Defendants ever attended or participated in any meetings when any alleged medical or dental condition of plaintiff's was discussed. None of the Moving Defendants ever encountered plaintiff and observed that plaintiff had a serious medical or dental condition or that he was in pain.

### *Kansas Department of Corrections Policies*

Kansas Department of Corrections Internal Management Policy and Procedure ("IMPP") Number 10-115 provides that "[m]edical and dental orthoses or prostheses and orthodontic devices and other aids to impairment may be provided, as determined by the Departmental Health Authority or designee, *when the health or mental health of the inmate would otherwise be adversely affected*." (Doc. 118-9 at 1) (emphasis added) IMPP 10-116 states that orthodontics are considered an elective dental procedure and not routinely offered. (*Id.* at 5) IMPP 10-116 further provides that "[d]ental treatment that falls outside of the professional capacity of the facility dentist shall be referred to an appropriate dental specialist upon approval of the Departmental Dental Authority." (*Id.* at 5)

### Plaintiff's Medical Treatment

Plaintiff's medical records reveal that he never complained of dental pain, sores in his mouth from his teeth, or breathing problems caused by his teeth when he visited the medical clinic. Plaintiff's medical records do not contain any statements by a treatment provider that plaintiff's medical conditions resulted from his teeth.

### Plaintiff's Dental Treatment

Plaintiff's dental records since January 25, 2005 show that no dental provider has ever prescribed him dental braces or any orthodontic procedure. On or around March 27, 2011, Plaintiff submitted a healthcare request for dental treatment stating that his teeth were overlapped, bucked, crowded, and crooked to the point that he would chew holes in the insides of his cheeks, his teeth caused a speech impediment, and he could not close his mouth or hold saliva in his mouth. He stated that his alleged dental condition "limits and impairs my major life activities (chewing, speaking and breathing)."

Before making this request in March 2011, the dental clinic had treated plaintiff biennially beginning in 2005. During his visits before March 2011, plaintiff made no complaints to the dental staff about dental pain, chewing holes in his cheeks, or problems closing his mouth. Plaintiff denied having any dental pain during his examination in October 2005 and again in October 2007. Plaintiff failed to appear for his regularly scheduled dental appointment in October 2009, the last scheduled appointment before he requested treatment for crooked teeth in March 2011.

On May 23, 2011, plaintiff attended a dental appointment with Dr. Keith Murray, D.D.S. During that visit, plaintiff stated that his teeth were crooked and sometimes he bites his lip. Dr. Murray examined plaintiff and determined that plaintiff "had essentially normal dentition absent

of periodontal disease." (Doc. 118-1 at 12; Doc. 130-6 at ¶ 3)  Dr. Murray explains that this means, in a layperson's terms, that plaintiff did not have gum disease.  (Doc. 130-6 at ¶ 3)  Dr. Murray did not see any irritation, lacerations, or ulcerations on plaintiff's lips or inner-cheeks or any scarring of the mucosa (the inside of a person's cheek).  After examining plaintiff, Dr. Murray concluded that it was not medically necessary for plaintiff to receive orthodontic treatment.  Dr. Murray told plaintiff "we don't do braces here" because the Kansas Department of Corrections' policy does not allow its institutions to provide cosmetic dental work and the only reason for plaintiff to receive such treatment was a cosmetic one.

During plaintiff's incarceration at LCF, Dr. Murray never observed any scarring, irritation, lacerations, or ulcerations on plaintiff's lips or inner-cheeks.  Dr. Murray never concluded that it was medically necessary for plaintiff to receive orthodontic treatment.  Dr. Murray never told any person that it was medically necessary for plaintiff to receive orthodontic treatment, or that such treatment was necessary to preserve plaintiff's life.  Dr. Murray never spoke to any of the Moving Defendants about any alleged medical or dental condition of plaintiff's, and none of the Moving Defendants ever attended a meeting where Dr. Murray discussed plaintiff's alleged dental condition.

Dr. Murray did attend a multidisciplinary team meeting on November 8, 2012, when the participants discussed plaintiff's complaints about his dental condition.  The participants at that meeting were:  plaintiff, Kansas Regional Medical Director Corbier, Unit Team Manager Nance, Unit Team Counselor Anderson, Regional Manager Hoffman, Regional Dental Director Dr. Murray, Chief of Psychiatry Dr. Zaylor, Director of Nursing Bailey, Mental Health Provider Leffingwell, PREA Coordinator Collins, EAI Special Agent Haehl, and Mental Health Coordinator Hendry.

17

On July 26, 2012, plaintiff attended a dental appointment at LCF with Brian Ahern, D.D.S.  Dr. Ahern noted that plaintiff had facial erosion of tooth #11 and trauma to his cheek. Dr. Ahern developed a treatment plan for plaintiff that included a filling for tooth #11 and a night guard.  Plaintiff refused the treatment recommended by Dr. Ahern.

After his transfer to the El Dorado Correctional Facility, plaintiff attended a dental appointment at that facility on May 30, 2013.  Jose Lopez, D.D.S., treated plaintiff during that visit.  Plaintiff complained to Dr. Lopez of crowded teeth and canines and requested braces.  Dr. Lopez explained to plaintiff that the clinic does not offer orthodontic treatment, but he offered to remove the sharp surfaces from plaintiff's canines.  Plaintiff refused the offer to remove the sharp surfaces and told Dr. Lopez that he just wanted braces.

### Plaintiff's Mental Health Treatment

Plaintiff does not claim that any of the Moving Defendants denied him mental health treatment.  Plaintiff consistently received mental health services during the time he complained about his alleged dental condition.  Defendant Parks, plaintiff's Unit Team Manager, knew about plaintiff's grievances about his alleged dental condition, and he requested mental health services for plaintiff on or about August 12, 2011.  Plaintiff received treatment from several social workers and a psychiatrist between August 2011 and June 2012.  Plaintiff complained about his teeth to the mental health professionals he met with while at LCF.  The mental health professionals developed a treatment plan for plaintiff that included bimonthly individual counseling.

On June 19, 2012, plaintiff refused to attend his mental health appointment.  Afterwards, plaintiff either refused to attend additional mental health appointments or, in some instances, he attended appointments but refused to communicate orally with mental health providers choosing

to communicate only in writing.  Throughout plaintiff's treatment, no mental health professional ever said that orthodontic procedures were necessary to address plaintiff's mental health or other medical issues.

### *Plaintiff's Personal Injury Claims*

Plaintiff never filed a personal injury claim about his teeth or any dental condition at LCF from January 2006 to February 2014.  Plaintiff did not submit any personal injury claim about his teeth or any alleged dental condition to the Secretary of Corrections from March 2011 to February 2014.

### C.  Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine dispute as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  When it applies this standard, the Court views the evidence and draws inferences in the light most favorable to the non-moving party.  *Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010) (citing *Oldenkamp v. United Am. Ins. Co.*, 619 F.3d 1243, 1245–46 (10th Cir. 2010)).  "An issue of fact is 'genuine' 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party' on the issue."  *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "An issue of fact is 'material' 'if under the substantive law it is essential to the proper disposition of the claim' or defense."  *Id.* (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson*, 477 U.S. at 248)).

The moving party bears "both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law."  *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (citing *Trainor v. Apollo*

*Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002)).  To meet this burden, the moving

party "need not negate the non-movant's claim, but need only point to an absence of evidence to

support the non-movant's claim."  *Id.* (citing *Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d

1121, 1125 (10th Cir. 2000)).

If the moving party satisfies its initial burden, the non-moving party "'may not rest on its

pleadings, but must bring forward specific facts showing a genuine issue for trial as to those

dispositive matters for which it carries the burden of proof.'"  *Id.* (quoting *Jenkins v. Wood*, 81

F.3d 988, 990 (10th Cir. 1996)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986);

*Anderson*, 477 U.S. at 248–49.  "To accomplish this, the facts must be identified by reference to

affidavits, deposition transcripts, or specific exhibits incorporated therein."  *Adler*, 144 F.3d at

670 (citing *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir.), *cert.*

*denied*, 506 U.S. 1013 (1992)).

Summary judgment is not a "disfavored procedural shortcut."  *Celotex*, 477 U.S. at 327.

Rather, it is an important procedure "designed 'to secure the just, speedy and inexpensive

determination of every action.'"  *Id.* (quoting Fed. R. Civ. P. 1).

### D.  Qualified Immunity Summary Judgment Standard

Where, as here, a defendant moves for summary judgment based on qualified immunity,

the Court applies a different standard than the one applied to summary judgment rulings.  *Clark*

*v. Edmunds*, 513 F.3d 1219, 1222 (10th Cir. 2008).  "When a defendant asserts a qualified

immunity defense, the burden shifts to the plaintiff to satisfy a strict two-part test:  first, the

plaintiff must show 'that the defendant's actions violated a constitutional or statutory right';

second, the plaintiff must show that this right was 'clearly established at the time of the conduct

at issue.'"  *Id.* (quoting *Nelson v. McMullen*, 207 F.3d 1202, 1205 (10th Cir. 2000)).  "'If, and

only if, the plaintiff meets this two-part test does a defendant then bear the traditional burden of

the movant for summary judgment—showing that there are no genuine issues of material fact

and that he or she is entitled to judgment as a matter of law.'" *Id.* (quoting *Nelson*, 207 F.3d at

1205).

To decide whether the plaintiff has met his burden of establishing a constitutional

violation that was clearly established, the Court must construe the facts in the light most

favorable to plaintiff. *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009)

(citations omitted). "However, because at summary judgment we are beyond the pleading phase

of the litigation, a plaintiff's version of the facts must find support in the record:  more

specifically, as with any motion for summary judgment, when opposing parties tell two different

stories, one of which is blatantly contradicted by the record, so that no reasonable jury could

believe it, a court should not adopt that version of the facts." *Id.* (citations and internal

quotations marks and alterations omitted).

### IV.    Analysis

The Moving Defendants assert several reasons why they are entitled to summary

judgment.  First, the Moving Defendants argue that plaintiff has failed to exhaust administrative

remedies before bringing this lawsuit.  Second, the Moving Defendants contend plaintiff's claims

against them in their official capacities for monetary relief are barred by sovereign immunity.

Third, the Moving Defendants assert that plaintiff's claims against them in their individual

capacities fail for two reasons:  (a) plaintiff cannot demonstrate the Moving Defendants

personally participated in the claimed constitutional violations, and (b) the Moving Defendants

are entitled to qualified immunity because plaintiff cannot show a violation of his clearly

established constitutional rights.  The Court addresses each argument in turn below.  In its

analysis, the Court construes plaintiff's arguments liberally because he proceeds pro se in this lawsuit, but does not assume the role of advocate for a pro se litigant by constructing arguments or searching the record.  *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005); *Hall v. Bellmon*, 935 F.2d 1106, 1110 & n.3 (10th Cir. 1991).

### A.  Exhaustion of Administrative Remedies

The Moving Defendants argue they are entitled to summary judgment because plaintiff has failed to exhaust his administrative remedies because he failed to file a personal injury claim, as Kan. Admin. Regs. § 44-16-104a requires.  This regulation provides:  "(a) Each inmate claim for personal injury shall be submitted to the [prison] facility and [the] secretary of corrections within 10 calendar days of the claimed personal injury."  Kan. Admin. Regs. § 44-16-104a.

The failure to exhaust administrative remedies under the Prison Litigation Reform Act ("PLRA") is an affirmative defense.  *Jones v. Bock*, 549 U.S. 199, 216 (2007).  At summary judgment, defendants "bear the burden of asserting and proving that the plaintiff did not utilize administrative remedies."  *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011) (citing *Jones*, 549 U.S. at 212).  If defendants prove that a plaintiff has failed to exhaust, however, the burden shifts to plaintiff to show that remedies were unavailable to him.  *Id.*

Here, the Moving Defendants have satisfied their initial burden to show that plaintiff failed to exhaust his administrative remedies for a personal injury claim under Kan. Admin. Regs. § 44-16-104a.  The Moving Defendants identified the personal injury claim procedure available to plaintiff under Kan. Admin. Regs. § 44-16-104a and submitted affidavits from an LCF official and a KDOC official attesting that plaintiff never filed a personal injury claim about his teeth or any dental condition at LCF or with the Secretary of Corrections.  In response, plaintiff does not dispute that he failed to file a personal injury claim under Kan. Admin. Regs. §

44-16-104a about his alleged dental condition.  Thus, the evidence establishes that plaintiff had access to personal injury claim procedures at LCF but he failed to exhaust these procedures before filing this lawsuit.  Therefore, the Court grants summary judgment to the extent plaintiff alleges any personal injury claim because he failed to exhaust administrative remedies under Kan. Admin. Regs. § 44-16-104a.

But this ruling does not dispose of plaintiff's lawsuit in its entirety.  There are "two distinct avenues of administrative exhaustion established in Kansas law."  *Lewis v. Carrell*, No. 12–CV–3112–DDC–JPO, 2014 WL 4450147, at *5 (D. Kan. Sept. 10, 2014).  One of these avenues is the exhaustion of a personal injury claim under Article 16 of chapter 44 of the Kansas Administrative Regulations, as described above.  The other avenue is the exhaustion of "inmate grievances" under Article 15 of chapter 44 of the Kansas Administrative Regulations.  Kan. Admin. Regs. § 44-15-101a.  The regulations in Article 15 apply to "a broad range of matters that directly affect the inmate, including" complaints about policies and conditions of imprisonment, actions of employees and other inmates, and incidents occurring within the facility.  Kan. Admin. Regs. § 44–15–101a(d)(1)(A)–(B).

These two sets of administrative procedures are distinct from one another.  *Lewis*, 2014 WL 4450147, at *6.  As the Kansas Court of Appeals has explained, the administrative procedures detailed in article 16 "govern[ ] inmate personal injury claims [and are] separate and distinct from the procedure for handling grievances" addressed by article 15.  *Redford v. Kansas ex rel. Dep't of Corr.*, 295 P.3d 1054, 2013 WL 781102, at *6 (Kan. Ct. App. Mar. 1, 2013) (unpublished table decision); *see also* Kan. Admin. Regs. § 44–15–102.  This means an inmate who wishes to pursue *both* a personal injury claim and a § 1983 claim must comply with two distinct sets of administrative procedures even if he bases his claims on a single act.  *See, e.g.*,

23

*Sharrock v. Stephens*, No. 10–CV–3210–CM/SAC, 2011 WL 5526444, at *1 (D. Kan. Nov. 14,

2011) ("Importantly, the requirements in [§ 44–16–104a] apply regardless of whether the inmate

pursues a grievance pursuant to § 44–15–101."); *Redford*, 2013 WL 781102, at *6 (This Kansas

regulation "expressly provides: 'The grievance procedure [in article 15] shall not be used in any

way as a substitute for, or as part of, the . . . property loss or personal injury claims procedure.'"

(quoting Kan. Admin. Regs. § 44–15–101 a(d)(2))).

     Thus, the case law establishes that exhaustion of Article 15's procedures alone is not

sufficient for a plaintiff to assert a personal injury claim; rather, to assert a personal injury claim,

a plaintiff must exhaust the administrative remedies provided by Article 16.  But the Court has

not located any authority requiring an inmate to exhaust both the requirements of Article 15 and

Article 16 before asserting a § 1983 claim based on an alleged violation of an inmate's

constitutional rights, and the Court declines to invent such a requirement here.  Moreover, our

Court previously has rejected the argument that an inmate is required to exhaust remedies under

both sets of administrative procedures before he can assert a § 1983 claim.  *See Lewis*, 2014 WL

4450147, at *6 n.3, 11–12 (denying summary judgment motion against a § 1983 claim because,

although plaintiff had failed to exhaust his administrative remedies for a personal injury claim

under Article 16, defendant failed to show that plaintiff had not exhausted his administrative

remedies under Article 15).

     In this case, plaintiff asserts a § 1983 claim for an alleged violation of his constitutional

rights for failure to provide proper dental care while he was housed at LCF.  This claim

constitutes a complaint about the conditions of his imprisonment and the actions of employees,

which an inmate is required to grieve under Kan. Admin. Regs. § 44–15–101 before filing suit.

That regulation establishes a four-part grievance process inmates must complete.  *See § 44–15–*

101(b), (d).  An inmate begins the grievance procedure by attempting "to reach an informal resolution of the matter with the personnel who work with the inmate on a direct or daily basis." § 44–15–101(b).  If the prisoner cannot resolve the matter informally through these means, he must then proceed through three additional levels of what the regulation terms as "problem solving."  This three-level process requires the inmate to submit a grievance report form to (1) an appropriate unit team member of the facility, (2) the warden of the facility, and (3) the office of the secretary of corrections.  § 44–15–101(d)(1)–(3).

The Moving Defendants do not assert that plaintiff has failed to exhaust his administrative remedies under Article 15 of the Kansas Administrative Regulations.  Moreover, the record shows that plaintiff filed a grievance with a unit team member, the warden at LCF, and the Secretary of Corrections.  *Martinez* Report (Doc. 118) at 10 –12; Ex. F to *Martinez* Report (Doc. 118-6) at 1–11.  Thus, on the current record, it appears that plaintiff exhausted his administrative remedies under Article 15 of the Kansas Administrative Regulations.  Therefore, the Court denies the summary judgment motion as it applies to plaintiff's § 1983 claim.  *See, e.g.*, *Strope v. Collins*, No. 06–3150–JWL, 2006 WL 3390393, at *2–3 (D. Kan. Nov. 22, 2006) (holding that plaintiff had exhausted administrative remedies under Article 15 of the Kansas Administrative Regulations and thus refusing to grant summary judgment against § 1983 claims alleging Eighth Amendment violations); *Jones v. Courtney*, No. 04-3255-JWL, 2005 WL 562719, at *3–4 (D. Kan. Mar. 7, 2005) (same).[5]

---

[5]        The Court recognizes that these two cases were decided before Kan. Admin. Regs. § 44-16-104a took effect on June 1, 2007.  Thus, the courts in these two cases relied only on the exhaustion requirements contained in Article 15 of the Kansas Administrative Regulations and did not address exhaustion of personal injury claims under Article 16, which had not yet been promulgated.

### B.  Official Capacity Claims

Plaintiff brings this lawsuit against the Moving Defendants in both their official and individual capacities.  To the extent plaintiff alleges claims for monetary damages against the Moving Defendants in their official capacities as State officials, the Moving Defendants argue that the Court should dismiss these claims under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.

A suit against a State official in his official capacity is treated as a suit against the government entity he represents.  *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (quoting *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 n.55 (1978))).  Such actions raise Eleventh Amendment concerns and thus require the Court to differentiate between suits that seek to recover money damages and those that merely seek prospective injunctive relief.  As for the former, the Eleventh Amendment bars claims against State defendants sued in their official capacities for money damages.  *Id.* at 169; *see also Peterson v. Martinez*, 707 F.3d 1197, 1205 (10th Cir. 2013).  Eleventh Amendment immunity, however, does not bar suits that seek only prospective relief against defendants in their official capacities.  *Graham*, 473 U.S. at 167 n.14 ("official-capacity actions for prospective relief are not treated as actions against the State." (citing *Ex parte Young*, 209 U.S. 123 (1908))).  To the extent plaintiff here seeks monetary relief from the Moving Defendants in their official capacities, the Court dismisses these claims because Eleventh Amendment immunity applies, and thus the Court lacks subject matter jurisdiction over such claims.

To establish liability under § 1983 against a defendant in his official capacity, plaintiff must show:  (1) "that a municipal employee committed a constitutional violation, and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation."  *Myers v. Okla. Cnty. Bd. of Cnty. Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978)).  But liability "will not attach 'where there was no underlying constitutional violation by any of [the officials].'"  *Ellis ex rel. Estate of Ellis v. Ogden City*, 589 F.3d 1099, 1105 (10th Cir. 2009) (quoting *Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986))).  Without evidence that an officer committed a constitutional violation, a plaintiff cannot establish the nexus required for official capacity liability under § 1983.  *Id.*; *see also Myers*, 151 F.3d at 1316 (no official capacity liability under § 1983 if there is no evidence that an officer committed a constitutional violation).

As explained in more detail below, the summary judgment record does not present any admissible evidence that could support a finding that any of the Moving Defendants personally violated plaintiff's constitutional rights.  Without an underlying constitutional violation, plaintiff's official capacity claims for declaratory and injunctive relief also fail as a matter of law.  *See Marino v. Mayger*, 118 F. App'x 393, 405 (10th Cir. 2004) (dismissing § 1983 claims against a county and three officers in their official capacities because plaintiff failed to state an underlying constitutional deprivation).  Therefore, the Court grants summary judgment in favor of the Moving Defendants on the claims asserted against them in their official capacities.[6]

---

[6]     Although the Moving Defendants do not make this argument, plaintiff's claims for injunctive relief against the Moving Defendants in their official capacities are also moot because plaintiff is no longer an inmate at LCF.  Thus his request for prospective injunctive relief against staff at LCF is mooted by his transfer to another prison facility.  *See Jordan v. Sosa*, 654 F.3d 1012, 1027 (10th Cir. 2011); *Green v. Branson*, 108 F.3d 1296, 1300 (10th Cir. 1997).

### C.  Individual Capacity Claims

The Moving Defendants next argue that plaintiff's claims asserted against them in their individual capacities fail for two reasons:  (1) there is no evidence that the Moving Defendants personally participated in an alleged violation of plaintiff's constitutional rights; and (2) the Moving Defendants are entitled to qualified immunity.

### 1.  Lack of Personal Participation

Plaintiff cannot hold the Moving Defendants liable for a § 1983 claim in their individual capacities simply based on their employment by the Kansas Department of Corrections; rather, the Moving Defendants are "'only liable for [their] own misconduct.'"  *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)).  To establish a claim under § 1983, a plaintiff must show an "affirmative link" between the defendant and the constitutional violation.  *Id.* (citing *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010)).  This showing requires more than "'a supervisor's mere knowledge of his subordinate's'" conduct.  *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)).  Instead, a plaintiff must satisfy three requirements to hold a defendant liable under § 1983:  (1) personal involvement; (2) causation; and (3) state of mind.  *Id.*

The Moving Defendants argue there is no evidence to support the first requirement of this test—that is, the Moving Defendants contend they did not personally participate in the alleged constitutional deprivation.  Before the Supreme Court decided *Iqbal*, the Tenth Circuit "allowed a plaintiff to establish personal involvement in several ways, for example, 'by demonstrating [a defendant's] personal participation, his exercise of control or direction, or his failure to supervise.'"  *Id.* at 768 (quoting *Dodds*, 614 F.3d at 1195).  A plaintiff could also establish personal involvement by a defendant supervisor's "'promulgation, creation, implementation, or

utilization of a policy that caused a deprivation of plaintiff's rights . . . .'" *Id.* (quoting *Dodds*, 614 F.3d at 1195).

In *Iqbal*, however, the Supreme Court established a stricter liability standard for the personal involvement requirement.  *Id.* (citing *Dodds*, 614 F.3d at 1199).  The Supreme Court explained that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.  While the Tenth Circuit has acknowledged that *Iqbal* raised the bar for personal involvement, it has "not yet had occasion to determine what allegations of personal involvement . . . meet *Iqbal*'s stricter liability standard."  *Schneider*, 717 F.3d at 768 (citing *Dodds*, 614 F.3d at 1199).

But this uncertainty is unimportant here.  For whether the Court applies the pre-*Iqbal* standard employed in our Circuit or uses the new formulation recognized by *Iqbal*, the summary judgment record here shows no personal participation by any of the Moving Defendants in the alleged violation of plaintiff's constitutional rights.  The uncontroverted facts in the summary judgment record establish that:  (1) none of the Moving Defendants was ever told by medical staff at LCF that any orthodontic procedure or treatment or other medical treatment was medically necessary for plaintiff's alleged dental condition or to preserve his life; (2) none of the Moving Defendants ever attended or participated in any meetings in which any alleged medical or dental condition of plaintiff's was discussed; and (3) none of the Moving Defendants ever had any encounter with plaintiff in which they observed that plaintiff had a serious medical or dental condition or that he was in pain.

Moreover, none of the Moving Defendants held positions at LCF which gave them the authority, or even the expertise, to determine whether it was medically necessary for plaintiff to

receive certain dental treatment.  Kansas Department of Corrections IMPP Number 10-115

provides, "Medical and dental orthoses or prostheses and orthodontic devices and other aids to

impairment may be provided, as determined by the Departmental Health Authority or designee,

when the health or mental health of the inmate would otherwise be adversely affected."  (Doc.

118-9 at 1)  IMPP 10-116 states that orthodontics are considered an elective dental procedure

and not routinely offered.  (*Id.* at 5)  IMPP 10-116 further provides that "[d]ental treatment that

falls outside of the professional capacity of the facility dentist shall be referred to an appropriate

dental specialist upon approval of the Departmental Dental Authority."  (*Id.* at 5)  Thus, under

these policies, the Departmental Health Authority or designee must prescribe the appropriate

dental care for plaintiff.  It is undisputed that none of the Moving Defendants held employment

positions at LCF which gave them the authority or the capability to determine appropriate

medical or dental care for inmates.

Further, there is no evidence that any dentist, mental health, or other medical professional

ever determined that plaintiff required orthodontic procedures for health or mental health

reasons.  To the contrary, Dr. Murray determined that the only reason for plaintiff to receive such

treatment was for cosmetic purposes.  Thus, none of the defendants was in a position at LCF to

order such treatment for plaintiff because no medical or mental health professional had

prescribed it.

Moreover, the summary judgment record contains no evidence that could establish a

Moving Defendant personally participated in the alleged constitutional violation to hold any of

them liable under § 1983.  The Court addresses each individual defendant's lack of personal

participation below in turn.

### a.  Defendant Pryor

The Kansas Department of Corrections employed Defendant Pryor as acting Warden and Warden at LCF at all times relevant to this lawsuit.  Pryor has submitted an affidavit attesting that he does not recall ever encountering plaintiff while he was housed at LCF.  Pryor's only involvement with plaintiff's alleged dental condition was signing a response to plaintiff's grievance complaining about his teeth.  But the "denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (citations omitted).  Where, as a here, a plaintiff's only proof involves denying a grievance, it is insufficient to establish an "affirmative link" between the defendant and any alleged constitutional violation.  *Id.*  Based on these summary judgment facts, there is no evidence that Pryor personally participated in the alleged constitutional deprivation.   That is, there is no evidence that Pryor personally failed to provide plaintiff proper dental care during his incarceration at LCF.  Thus, Pryor is therefore entitled to summary judgment.

### b.  Defendant Deere

The Kansas Department of Corrections employed Defendant Deere as Deputy Warden of Programs at LCF at all times relevant to this suit.  Deere has submitted an affidavit establishing that he never knew about plaintiff's complaints about his alleged dental condition until plaintiff filed this lawsuit.  Deere never encountered plaintiff in person while he was housed at LCF, and he never observed that plaintiff had a serious medical or dental condition or that he was in pain. This evidence establishes that Deere did not personally participate in the alleged constitutional violations, and plaintiff fails to set forth any evidence creating a genuine issue about Deere's personal involvement.  Thus, Deere is entitled to summary judgment on plaintiff's claims.

### c.  Defendant Peterson

The Kansas Department of Corrections employed Defendant Peterson as a Unit Team Manager and Policy and Compliance Manager at LCF at all times relevant to this suit.  Peterson was familiar with plaintiff's allegations because he reviewed grievances plaintiff filed about the alleged dental condition.  But, like defendant Pryor, plaintiff cannot hold Peterson liable under § 1983 simply because he denied plaintiff's grievances.  Rather, plaintiff must establish that the denials of plaintiff's grievances were connected to the violation of plaintiff's constitutional rights, thereby establishing an "affirmative link" between the defendant and the alleged constitutional violation.  *See Gallagher*, 587 F.3d at 1069.  Here, no fact establishes that Peterson personally participated in an alleged constitution violation.  His only involvement with plaintiff's allegations involved reviewing grievances which, by itself, does not establish an "affirmative link" necessary to hold Peterson liable under § 1983.

Moreover, the summary judgment facts show that Peterson did not deny plaintiff medical care for his alleged dental condition.  To the contrary, Peterson responded to plaintiff's grievance about his teeth by contacting CCS staff and Unit Team Manager Parks to ensure that they scheduled plaintiff for a dental appointment.  In sum, no evidence shows that Peterson personally participated in an alleged constitutional violation, and this entitles him to summary judgment on plaintiff's claims.

### d.  Defendant Parks

The Kansas Department of Corrections employed Defendant Parks as a Unit Team Manager at LCF at all times relevant to this suit.  In this role, Parks knew of plaintiff's complaints about his alleged dental condition because Parks reviewed and responded to grievances and form 9s that plaintiff filed about his alleged dental condition.  After plaintiff

32

complained to Parks about his alleged dental condition, Parks consulted with medical staff. He also reported back to plaintiff that the orthodontic procedure plaintiff requested was an elective cosmetic procedure not provided by CCS.

Thus, the summary judgment facts establish that Parks' only involvement with plaintiff's alleged dental condition was reviewing plaintiff's grievances and form 9s and his correspondence with medical staff about plaintiff's request for an elective dental procedure. This evidence, by itself, does not establish a connection between Parks and the alleged constitutional violation, which is required to establish liability under § 1983. *See Gallagher*, 587 F.3d at 1069. Because plaintiff has failed to come forward with any evidence creating a genuine issue about Parks' involvement in the alleged constitutional violation, Parks is entitled to summary judgment.

### e.  Defendant Bryan

The Kansas Department of Corrections employed Defendant Bryan as a Corrections Officer II assigned to medium grounds crew at LCF at all times relevant to this suit. Bryan has submitted an affidavit establishing that he never knew of any medical condition that plaintiff had while housed at LCF. It also establishes that Bryan never knew plaintiff had filed any grievances or any other form of complaint about an alleged dental condition. Plaintiff has failed to come forward with any admissible evidence disputing Bryan's lack of knowledge about his alleged dental condition. Thus, there is no evidence that Bryan personally participated in any alleged constitutional violation.

This is so even though Bryan filed two disciplinary reports against plaintiff during his incarceration at LCF. These reports do not establish that Bryan knew about any alleged medical or dental condition, or that plaintiff had filed grievances about any medical condition. Thus,

there is no evidence that Bryan filed these discipline reports as retaliation for plaintiff's complaints. Moreover, after plaintiff was convicted of all charges in the disciplinary reports, he appealed the convictions. During these appeals, plaintiff claimed that Bryan filed the disciplinary reports as retaliation for plaintiff's grievances about his alleged dental condition, or that Bryan made comments about plaintiff's grievances or alleged dental condition. The Secretary of Corrections affirmed plaintiff's convictions on appeal. These summary judgment facts establish that Bryan did not personally participate in the alleged constitutional violations, and therefore, this entitles Bryan to summary judgment on plaintiff's claims.

In sum, plaintiff had adduced no admissible evidence which could support a rational finding that any of the Moving Defendants personally participated in the alleged constitutional violations. This means plaintiff's claims against them under § 1983 in their individual capacities fail as a matter of law. Therefore, the Court grants summary judgment against plaintiff's claims asserted against the Moving Defendants in their individual capacities.

## 2.  Qualified Immunity

The Moving Defendants also move for summary judgment arguing that they are entitled to qualified immunity for plaintiff's claims against them in their individual capacities. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.*

34

To establish a § 1983 claim against an individual defendant asserting the defense of qualified immunity, plaintiff must show facts that "make out a violation of a constitutional right," and demonstrate that "the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.* at 232 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). A court has discretion to determine "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236.

As discussed above, plaintiff has failed to demonstrate that the Moving Defendants violated a clearly established constitutional right. Thus, because there is no evidence in this case that the Moving Defendants violated plaintiff's constitutional rights, the Court determines that the Moving Defendants are entitled to qualified immunity under the first prong of the qualified immunity analysis and does not address whether the right at issue was "clearly established" under the second prong.

Moreover, to establish a claim under the Eighth Amendment, a plaintiff must show that defendants acted with "deliberate indifference to serious medical needs." *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009) (citations and internal quotation marks omitted). The test for showing deliberate indifference contains both objective and subjective components. *Id.* (citing *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006)). "The objective component of the test is met if the 'harm suffered rises to a level "sufficiently serious" to be cognizable under the Cruel and Unusual Punishment Clause' of the Eighth Amendment." *Id.* (quoting *Mata v. Saiz*, 427 F.3d 745, 752–53 (10th Cir. 2005) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994))). The Tenth Circuit has explained that "a medical need is considered 'sufficiently serious' [under the objective element] if the condition 'has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a

doctor's attention.'" *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001) (quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999)).

The subjective component requires a plaintiff to show "'that the defendants knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Martinez*, 563 F.3d at 1089 (quoting *Callahan*, 471 F.3d at 1159). "'[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Id.* (quoting *Farmer*, 511 U.S. at 837).

Here, plaintiff fails to meet both the objective and subjective elements. First, plaintiff has not shown that he had a sufficiently serious medical need to satisfy the objective element. The summary judgment facts establish that no health care provider ever diagnosed plaintiff as having a dental condition that required braces as a mandatory treatment. *See Oxendine*, 241 F.3d at 1276. Instead, plaintiff received dental treatment from Dr. Murray who concluded that plaintiff's request for braces was based on purely cosmetic concerns, and not a medically necessary one. While plaintiff may disagree with the medical treatment provided to him at LCF, his "difference of opinion" about whether he should have received braces for his alleged dental condition does not support a claim for violation of his constitutional rights. *See Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993) ("At most, plaintiff differs with the medical judgment of the prison doctor . . . Such a difference of opinion does not support a claim of cruel and unusual punishment."); *see also Gee v. Pacheco*, 627 F.3d 1178, 1192 (10th Cir. 2010) (where plaintiff alleged he was not provided the medications that he desired, but was given other medications, his complaint

amounted to merely a disagreement with the doctor's medical judgment about the most appropriate treatment and did not rise to the level of an Eighth Amendment violation).

The summary judgment facts do not establish that plaintiff's alleged dental condition was "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* (internal quotation marks omitted).  None of the Moving Defendants ever had any encounter with plaintiff where they observed that plaintiff had a serious medical or dental condition, or that he was in pain.  Moreover, plaintiff's subjective beliefs about his medical condition are not sufficient to create a genuine issue for trial.  *See Nielander v. Bd. of Cnty. Comm'rs of Cnty. of Republic, Kan.*, 582 F.3d 1155, 1165 (10th Cir. 2009) ("A plaintiff's subjective beliefs . . . without facts to back up those beliefs, are not sufficient to create a genuine issue of fact."). Thus, plaintiff has failed to show that he had a serious medical need to satisfy the objective component of the deliberate indifference test.

Second, plaintiff also has not met the subjective component of the deliberate indifference test.  This prong requires him to show that defendants knew of a substantial risk of harm and disregarded that risk to an inmate's health or safety.  *See Martinez*, 563 F.3d at 1089.  The undisputed facts establish that:  none of the Moving Defendants was ever told by medical staff at LCF that any orthodontic procedure or treatment or other medical treatment was medically necessary for plaintiff's alleged dental condition or to preserve his life; none of the Moving Defendants ever attended or participated in any meetings where any alleged medical or dental condition of plaintiff's was discussed; and none of the Moving Defendants ever had an encounter with plaintiff where they observed plaintiff that could have permitted them to believe he had a serious medical or dental condition or that he was in pain.  Plaintiff has failed to come forward with any evidence showing that any of the Moving Defendants knew that plaintiff faced a

substantial risk of harm.  Without evidence that could support such a fact, plaintiff cannot satisfy the subjective component of the deliberate indifference test.

In sum, plaintiff has failed his summary judgment burden because he has not established that the Moving Defendants were deliberately indifferent to serious medical needs, and therefore he has not shown a violation of the Eighth Amendment.  Because no evidence can support a finding that the Moving Defendants violated plaintiff's constitutional rights, the Moving Defendants are entitled to qualified immunity from this lawsuit.  Therefore, the Court also grants summary judgment in favor of the Moving Defendants because they are entitled to qualified immunity.[7]

## V.      Conclusion

The Court grants defendants Correct Care Solutions and Toby Harkins' Motion to Quash Service and/or to Dismiss for the following reasons:  (1) CCS is not a proper defendant in this lawsuit because the Court has already dismissed CCS from the action and the Tenth Circuit affirmed that dismissal; thus, to the extent the summons is construed as effecting service upon CCS, the Court quashes the summons and dismisses CCS from this lawsuit; (2) Harkins was not properly served with process as required by Fed. R. Civ. P. 12(b)(5); and (3) the claims against Harkins in his official capacity are moot, and therefore he is entitled to dismissal from the case.

---

[7]      The Moving Defendants also argue that plaintiff has failed to demonstrate that he was denied mental health treatment, and thus the Moving Defendants are entitled to qualified immunity to the extent plaintiff alleges such a claim.  Even if plaintiff asserts such a claim, the Tenth Circuit has already affirmed the dismissal of any claims not related to the "alleged denial of orthodontic or other specialized dental care to correct a serious dental condition."  (Doc. 92 at 11)  Thus, in this suit, plaintiff cannot allege a claim for denial of mental health treatment.  But, even if he could assert such a claim, the summary judgment record shows that plaintiff received mental health treatment at LCF, but that he refused to attend mental health appointments.  Also, there is no evidence that any mental health provider diagnosed plaintiff as requiring orthodontic procedures to heal his medical or mental health issues.  Thus, even if plaintiff could assert a claim for denial of mental health treatment, the Moving Defendant would be entitled to qualified immunity because there is no evidence that the Moving Defendants violated plaintiff's constitutional rights.

The Court grants the Moving Defendants' Motion for Summary Judgment for the following reasons:  (1) plaintiff has failed to exhaust administrative remedies under Kan. Admin. Regs. § 44-16-104a, and therefore, to the extent plaintiff alleges any personal injury claim, such claim fails for failure to exhaust administrative remedies; (2) plaintiff's claims against the Moving Defendants in their official capacity for monetary damages are dismissed because such claims are barred by the Eleventh Amendment; and (3) plaintiff's claims against the Moving Defendants in their individual capacities are dismissed because (a) there is no evidence of personal participation in the alleged constitutional deprivation by the Moving Defendants, and (b) the Moving Defendants are entitled to qualified immunity because there is no evidence that they violated a "clearly established" right under the Constitution or federal law.  For all these reasons, the Court dismisses the Moving Defendants from this lawsuit.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants Daniel Bryan, Kyle Deere, Andrew Parks, Brett Peterson, and Rex Pryor's Motion for Summary Judgment (Doc. 129) is granted.

**IT IS FURTHER ORDERED THAT** defendants Correct Care Solutions and Toby Harkins' Motion to Quash Service and/or to Dismiss (Doc. 143) is granted.

**IT IS SO ORDERED.**

**Dated this 30th day of January, 2015, at Topeka, Kansas.**

s/ Daniel D. Crabtree
**Daniel D. Crabtree**
**United States District Judge**